PITTSBURGH BRIDGE & IRON WORKS, Inc., v. HEINER, Collector of Internal Revenue.

District Court, W. D. Pennsylvania. February 24, 1928.

No. 3284.

Internal revenue ⬅25—Corporation, taking monthly balance sheets, properly filed income tax returns on calendar year basis, though physical inventories were annually taken May 31 (Revenue Act 1917 [Comp. St. § 6336aa et seq.]).

Where corporation, for information of its directors, had for many years taken monthly comparative balance sheets, with profit and loss statements, based on monthly inventories, which in each case started with inventory on hand at close of preceding month, and for many years prior to 1917 had filed its income tax returns on a calendar year basis, *held*, that it properly filed income tax on calendar year basis for 1917, where it had not requested permission to change from fiscal year basis under Revenue Act 1917 (Comp. St. § 6336aa et seq.) in absence of proof of inaccuracies of method, or manipulation of inventories, though its annual physical inventory was taken on May 31 of each year, and its books were ruled off as if closed on yearly period ending on such date.

At Law. Action by the Pittsburgh Bridge & Iron Works, Inc., against D. B. Heiner, Collector of Internal Revenue for the Twenty-Third District of the United States, and the Commonwealth of Pennsylvania. Judgment for plaintiff.

S. Leo Ruslander and Geo. K. Warn, both of Pittsburgh, Pa., for plaintiff.

John D. Meyer, U. S. Atty., of Pittsburgh, Pa., for defendant.

THOMSON, District Judge. This is an action by the Pittsburgh Bridge & Iron Works, Incorporated, against D. B. Heiner, Collector of Internal Revenue, to recover the sum of $13,674.97, alleged overpayment of income and profits taxes for the calendar year 1917. Plaintiff regularly filed its income and profits tax return for that year, and duly paid the amount thereof to the collector. Subsequently, being notified by the Commissioner of Internal Revenue of the additional assessment, the same was paid under protest, and, its claim for refund being refused, this action is brought to recover the amount so paid.

The issue is within narrow limits. No evidence was offered by the defendant, and the case arises on the admissions in the pleadings, plaintiff's exhibits, and the oral testimony given by the president of the company. Whether the method adopted by the plaintiff in the calculation of the income and profits taxes is correct is the only issue before the court.

The plaintiff is a Pennsylvania corporation, engaged in the business of fabricating and erecting steel bridges and buildings. It buys structural iron and steel for these purposes from manufacturers, usually ordering according to blueprint or specifications received from the customer, and has been continuously engaged in this line of business since 1905. During all that time Mr. Klingelhofer has been president of the company. From about 1907, it has been the uniform practice of the company to have a comparative balance sheet, with profit and loss statement, made monthly for submission to the board of directors at their regular monthly meetings. These statements were made under the immediate personal supervision of the president.

In order to take off an accurate statement of the profit and loss for each month, it was necessary to show on the comparative balance sheets the inventory at the end of each month. Mr. Klingelhofer testified that, for at least ten years prior to 1917, he personally supervised the makeup and pricing of the items which went into these monthly inventories. He testified in detail as to the methods used in preparing the inventories, both as to quantities and prices. In each case he started with the inventory on hand as of the close of the preceding month. He next obtained from invoices the other accurate accounting data maintained by the company, the amount of purchases per month, and the amount of materials fabricated during the month. If the purchases exceeded the amount

fabricated, the difference was added to the inventory on hand; if the purchases were less than the amount of material fabricated, the difference would be deducted. To the amount thus obtained would be added the amount of fabricated material on hand not yet shipped to the different jobs, including therein the cost of manufacture.

The inventory thus made up comprehended a physical inventory taken monthly, consisting of paints and other similar small stores. These were not large in amount. The bulk of the inventory consisted of structural steel shapes. Having accurate data as to the number of pieces, the sizes and shapes of the structural materials on hand, the witness fixed, with apparent accuracy, the amount thereof, in tons. The president testified that, even where a physical inventory was taken, it was not the practice to weigh the large pieces of structural material, as it would have added nothing to the accuracy of the inventory in arriving at the tonnage. The materials were then priced at cost, and during the year 1917, as cost was always lower than the market price, the inventories could be said to have been priced each month during the year 1917, at cost or market, whichever was the lower.

The witness testified with positiveness that the inventories thus taken month by month, particularly the inventory as of December 31, 1916, and that of December 31, 1917, were priced at cost, which was always less than market during those particular periods, and that the quantities were as accurate as if a physical inventory had been taken. His testimony further shows that the physical inventories were usually taken on or about June 1st of each year, and that in the years in which the method adopted was followed, the physical inventories disclosed that the monthly inventories were accurate.

While the books of the corporation were ruled off as if closed on a yearly period ending May 31st of each year, the witness testified that he considered that the books of the company were on a monthly basis, because an accurate profit and loss statement, as well as a balance sheet, were taken off each month, and these statements were preserved as original records of the company. Exhibits were offered, showing the comparative balance sheets, with profit and loss statements, for the months of December, 1916, and December, 1917. Other exhibits were offered corroborating the methods followed by the company as testified to by the president.

It further appears from his testimony that, from the time the first federal income tax returns were required, starting in 1909, the plaintiff filed its returns on a calendar year basis; that is, a year beginning January 1st and ending December 31st. This was in harmony with the law, as calendar year returns were required, and no other basis was recognized. The act of 1917 (Comp. St. § 6336aa et seq.) permitted a taxpayer, if he so desired, to file on a fiscal year basis by first obtaining permission from the Commissioner to do so; but the plaintiff company did not consider that it was on a fiscal year basis, and did not ask for, or receive, permission to file its returns other than on a calendar year basis. It appears clear that the tax return for the year 1917 was in fact filed on a calendar year basis as the law requires.

In the tenth paragraph of plaintiff's statement, it is averred: "Plaintiff, for many years prior to 1917, filed its income tax returns on a calendar year basis. Under the Revenue Act of 1917, not having requested permission to change to a fiscal year basis, its income and profits tax return had to be filed on a calendar year basis as was done." These averments are admitted by the affidavit of defense.

The additional tax assessed and paid, for which this suit is brought, arises solely from the determination of the Commissioner of Internal Revenue that the return filed by the plaintiff for the calendar year 1917 did not clearly reflect income. This conclusion was based upon the determination of the Commissioner that the inventory shown on Schedule 4-a, "Cost of goods and other property sold," as at the beginning and end of the year 1917, and the opening and closing inventory, were not substantially correct, and that, as plaintiff had taken physical inventories as of May 31, 1916, and May 31, 1917, the proper method of arriving at plaintiff's 1917 calendar year income was to take and use the so-called physical inventories taken as of May 31, 1917, and May 31, 1918, and computing as the taxable income for 1917 the sum of five-twelfths of the income for the fiscal year ending May 31, 1917, and seven-twelfths of the income for the fiscal year ending May 31, 1918.

The method adopted by the plaintiff must be regarded with favor, because it was the method continuously adopted for the period of 10 years or more, as exhibiting to the board of directors, who were vitally interested in knowing the exact financial condition of the company, the profit and loss from month to month. It is entirely clear that the return for 1917 was a calendar year return. I am

by no means satisfied that the method adopted by the Commissioner of taking two full fiscal years, and then obtaining a calendar year return by taking five-twelfths of 1917 and seven-twelfths of 1918, reflects with as much accuracy the true net income for the year 1917 as that shown by the plaintiff's return. As no evidence was offered on the part of the defendant, there was no effort to justify the arbitrary allocation of income.

I find nothing in the case to show that the plaintiff's method of arriving at the amount of materials, or its prices, was incorrect. There is no suggestion that the taxpayer manipulated its inventories, either as to quantities or prices, to obtain any tax advantage. My conclusion is that the additional tax assessment, which plaintiff was required to pay, was erroneous, and therefore that plaintiff is entitled to recover the amount of $13,674.97, with interest thereon from September 8, 1923.

Judgment is permitted to be entered accordingly.