## WILSON v. COMMISSIONER OF INTERNAL REVENUE.

### ARTHUR v. SAME.
### Nos. 1138, 1139.

Circuit Court of Appeals, Tenth Circuit.
March 26, 1935.

Wilbur F. Denious, Hudson Moore, and Dayton Denious, all of Denver, Colo., for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and John G. Remey, Sp. Assts. to Atty. Gen., for respondent.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The question submitted for decision in these cases is whether petitioners were entitled to inventory unsold securities at the end of the calendar year 1929 in computing their net income for that year.

Petitioners were connected with Otis & Co. of Denver, Colo., throughout the year. That firm, hereinafter called the company, was engaged in the brokerage business and sold certain issues of unlisted stocks which it had underwritten, notably Continental Shares. Arthur was salesman and head of the sales department and became a partner in the company in July. Wilson was a partner in the company during the entire year and handled the execution of customers' buying and selling orders on the stock exchange. On February 5th they entered into a written agreement by which they formed a partnership for the stated purpose "of trading in stock at Otis & Co." Wilson financed the enterprise; Arthur furnished his skill as an experienced salesman, and they divided the profits equally. The partnership opened an account with the company under the designation of C. E. Wilson, Agent. Practically all of the securities in which the partnership dealt were unlisted securities which the company had underwritten, the bulk being Continental Shares. The company underwrote large quantities of securities and its inventory sometimes became excessive. The partnership bought blocks of stock at times and held them until Arthur could market them. In that way the inventory of the company was relieved and its liabilities reduced. Upon receipt of an order for Continental Shares, either through personal solicitation or from another broker, it was determined by reference to the inventory condition of the company and that of the partnership whether the order should be filled with shares of the former or the latter. All purchases and sales made by the partnership were run through the company and the company received a commission on all shares purchased through the partnership, also on rare occasions it received a small commission on retail sales made by the latter. In all purchases from the company the partnership was allowed a price between the asked and the bid figure, thus insuring a profit unless the market fell. The partnership used a form furnished by the company in making purchases from it; and the partnership confirmed to its customers through the company. It engaged in about two hundred transactions during its existence, but kept no books or records, except a file containing monthly statements furnished by the company showing the account between the two. Its business was conducted from the offices of the company; it did not maintain separate offices or a separate place of business, and there was nothing on the office doors of the company or on the doors of individual offices of the partners to indicate that they were transacting business as dealers. The partnership was known in the local financial district as a merchant dealing in the securities of the company, but was not listed either in the telephone directory or in any commercial paper. It was licensed in the city of Denver as a banker, but it had no broker's permit. Neither partner severed his connection with the company. At the close of the calendar year 1929, the partnership held securities having a market value of $78,517.70 less than cost and by amended returns petitions asserted that the partnership was a dealer in securities and sought to include that loss. The Commissioner rejected the claim and imposed consequent deficiency assessments. The Board of Tax Appeals affirmed, holding that instead of the evidence establishing the status of a dealer in securities it was equally consistent with that of partners in a trading account with the company by which they were employed. 29 B. T. A. 1022. The cases are here on petition to review.

Section 22 (c) of the Revenue Act of 1928 (45 Stat. 797, 798, 26 USCA § 2022 (c) provides: "Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income."

Article 105, Treasury Regulation 74, promulgated under the statute, reads: "A dealer in securities, who in his books of account regularly inventories unsold securities on hand either (a) At cost; (b) At cost or market, whichever is lower; or (c) At market value, may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed shall be included in or attached to the return, that all the securities must be inventoried by the same method, and that such method must be adhered to in subsequent years, unless another be authorized by the Commissioner. For the purpose of this rule a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. If such business is simply a branch of the activities carried on by such person, the securities inventoried as here provided may include only those held for purposes of resale and not for investment. Taxpayers who buy and sell or hold securities for investment or speculation and not in the course of an established business, and officers of corporations and members of partnerships who in their individual capacities buy and sell securities, are not dealers in securities within the meaning of this rule."

■ It may be said in general language that the income tax law concerns itself exclusively with realized gains and losses. Weiss v. Wiener, 279 U. S. 333, 49 S. Ct. 337, 73 L. Ed. 720; Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538, 67 A. L. R. 1010. The statute in question authorizing use of inventories is an exception and the determination of the circumstances in which it may be invoked is vested in the discretion of the Commissioner. In the exercise of that discretion the Commissioner provided by regulation that a dealer in securities may invoke its provisions and he further determined as a fact that these petitioners were not such dealers. A determination of the Commissioner is presumptively correct, and a finding of the

Board is binding on review if it is supported by substantial evidence. Prey Bros. Live Stock Com. Co. v. Commissioner (C. C. A.) 36 F.(2d) 326; Golden Cycle Corp. v. Commissioner (C. C. A.) 51 F.(2d) 927; Walls v. Commissioner (C. C. A.) 60 F.(2d) 347; Folk v. Commissioner (C. C. A.) 67 F.(2d) 779; Emerald Oil Co. v. Commissioner (C. C. A.) 72 F.(2d) 681; United States v. Amalgamated Sugar Co. (C. C. A.) 72 F.(2d) 755. That is the ordinary doctrine, but in a case of this kind presenting an innovation to the general scheme of income tax in which the proper use of inventories rests in the discretion of the Commissioner, a heavy burden rests upon the taxpayer to bring himself clearly within the statute and regulation and to show that the action of the Commissioner was plainly arbitrary. Lucas v. Kansas City Structural Steel Co., 281 U. S. 264, 50 S. Ct. 263, 74 L. Ed. 848; Finance & Guaranty Co. v. Commissioner (C. C. A.) 50 F.(2d) 1061.

■ Petitioners assert that the finding of the Board is not supported by substantial evidence and should be overturned because they testified to facts showing that the partnership was a dealer in securities and no one testified to the contrary. The Board is a fact finding tribunal, and even though the evidence before it is undisputed, if different conclusions may reasonably be drawn therefrom an issue of fact is presented and the finding carries binding force on review. Avery v. Commissioner (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277; Dooley Lumber Co. v. United States (C. C. A.) 63 F.(2d) 384, certiorari denied 290 U. S. 640, 54 S. Ct. 58, 78 L. Ed. 556; Helvering v. Ames (C. C. A.) 71 F.(2d) 939; Randolph v. Commissioner (C. C. A. 8) 76 F.(2d) 472.

We think the evidence here falls far short of showing that the action of the Commissioner was plainly arbitrary. On the contrary, the established facts and the reasonable inferences to be drawn from them show that the plan was merely an expedient in the nature of a trading account through which the company could ostensibly reduce its excessive underwritings at needed junctures. Manifestly that does not come within the statute and regulation.

The orders of the Board are severally affirmed.