## DELSING et al. v. UNITED STATES.
### No. 13243.

United States Court of Appeals,
Fifth Circuit.

Jan. 5, 1951.

Oliver W. Hammonds, Dallas Tex., for appellants.

Carlton Fox, Ellis N. Slack, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Frank B. Potter, U. S. Atty., Fort Worth, Tex., O. Morris Harrell, Asst. U. S. Atty., Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

### RUSSELL, Circuit Judge.

In this suit to enforce refund of income taxes, in the District Court the parties by stipulation submitted as the sole issue, whether the profit from the sale of Twelve and one-half duplex dwelling units should be treated as capital gain under the provisions of Section 117 (j) (1) (B) of the Internal Revenue Code, 26 U.S.C.A., or ordinary income, with determination of this in turn restricted to whether such property was or was not held "primarily for sale to customers in the ordinary course" of the plaintiff taxpayers' "trade or business." Upon evidence presented by stipulation, and by the oral testimony of the taxpayer, the trial Court found "the facts to be as stipulated by the parties plus the fact that these properties were originally constructed for sale, or, rental, and, that that course of sale was in the regular course of business when they were sold," and entered judgment for the government. Thus the sole question here presented is whether the finding is supported by the evidence, or whether it should be set aside as clearly erroneous.

We have concluded that the finding of the Court has no sufficient support in the evidence, is therefore clearly erroneous, and must be set aside.

Without attempting to fully detail the facts, it is sufficient to say that the general factual situation relied upon by the taxpayer is that though he, in partnership with another, had for several years prior to World War II been engaged in a substantial business of construction of homes for sale,—which sales were always consummated prior to or upon completion of the houses,—as the result of solicitation of officials of the Federal Housing Administration in their effort to provide defense rental housing units for war workers in the North Texas area, constructed forty-five defense rental units. In order to construct the housing units it was necessary to secure priorities, and as a result of application for preference ratings, made in March, 1942, the taxpayer and the partnership were required to and did agree to construct the houses for rent at fixed monthly rental to persons engaged in war activities, and further agreed not to dispose, or contract for disposal, except in accordance with defined regulations which, as amended, required taxpayer to hold the duplex houses here involved for rent at rentals authorized, and further to rent only to eligible war workers. This order provided that the war worker tenant could purchase the duplex after a minimum period of four months, later reduced to two months, on specified terms. After completion the housing units were rented to war workers on a month to month basis, and continued to be rented until August of 1945 when occurred the first of the sales now involved, and the remainder of which were consummated in October and December of 1945.[1] By agency regulation, on and after August, 1943, taxpayer could have sold one-third of the entire defense rental project, but he at no time made any effort to secure approval or to sell any of the units until solicited by returning service men in 1945 to whom he made the sales referred to. To service the

---

1. The partnership was dissolved in May, 1944, at which time taxpayer received title to twenty-two and one-half of the duplexes and continued after 1945 to rent the remaining ten.

rental units the taxpayer maintained a rental office and also devoted a major portion of his time to the operation and management of the properties in performing the activities customary in connection with rental properties. There was a complete segregation of bookkeeping entries and accounting between the income from rental property and the house construction and sales activities of taxpayer. From 1942 to 1945, these latter related only to some 273 defense housing units constructed for sale in 1944 by a different partnership of which taxpayer was a member. After 1945 the construction exclusively for sale business of taxpayer was likewise segregated. Profit from these sales was reported as ordinary income. No "for sale" or advertisements were placed as to any of the claimed rental property. This was in direct contrast with the sale procedure employed in procuring sales of other property constructed for sale in the period 1945 to 1948. In the latter instance, as was generally true in disposing of houses constructed for sale, the sales were effectuated by a real estate agent. Taxpayer was not a licensed real estate agent.

The only facts relied upon by the government, which could be considered at all material, to controvert and overthrow the taxpayer's position as above summarized, are the statements in a letter written by the taxpayer in January of 1942 to the Federal Housing Administration, apparently as a part of an application for insured loans that "these houses are to be built for sale or rent. The houses will be offered for sale, assuming permission for this can be obtained from the O. P. M., on the basis," etc., together with the fact that during the years in question the taxpayer's income from sales, his usual business, greatly exceeded his income from rentals.

It is apparent from the finding of the trial Court that much weight was given to the statement of intention contained in the letter referred to, and also to the admitted fact that the taxpayer's sales activities constituted his major activity, and from this the Court found that any sale of real estate by him was in the ordinary course of his business. We think the weight to be given to the statement in the letter has been overemphasized in view of the subsequent restriction embodied in the formal application and agreement under which the houses were actually built, held, and operated by the taxpayer during the period of approximately three years. The disparity between income from sales and from rentals is not controlling. Under the facts and circumstances of this case, we find no permissible basis for a determination that the sales of the originally constructed defense rental housing units constituted a disposition of "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business," so as to render the profit taxable as ordinary income.[2]

We think the transactions evidenced the sale of capital assets and that accordingly the judgment must be, and is, reversed and the cause remanded with direction to enter judgment in favor of the taxpayer for the amount of refund claimed.

Reversed.

2. Compare Dunlap v. Oldham Lumber Co., 5 Cir., 178 F.2d 781.