WOOD et al. v. COMMISSIONER OF
INTERNAL REVENUE.

No. 13582.

United States Court of Appeals,
Fifth Circuit.

June 24, 1952.

Austin Bertrand Wood, pro se, and Edwin A. Nesbitt, Dallas, Tex., for petitioner.

S. Dee Hanson, Ellis N. Slack, Fred E. Youngman, Special Asst's. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, W. Herman Schwatka, Special Atty., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

These petitions for review involve deficiencies in federal income tax asserted against petitioners for the calendar years 1944, 1945, and 1946. In their brief, petitioners present five issues as follows:

"Issue No. I:

"(a) Did respondent erroneously determine inventories shown in petitioners returns at the close of the years 1944–1945 were understated; and

"(b) did respondent erroneously make use of first-in first-out method of arriving at cost in order to increase the inventory values of petitioners said returns?

"Issue No. II:

"Did respondent erroneously determine that petitioners inventory values at close of year 1944 were understated in their returns; or that taxable income was in any-way reduced by transfer of four shares of First National Bank from inventory to his wife?

"Issue No. III:

"Did respondent erroneously determine the loss sustained by petitioners in 1944 on sale of 30 shares Realty Trust Co. was a long-time capital loss?

"Issue No. IV:

"Did respondent erroneously determine that petitioner sustained no deductible loss on sale of rental property in 1945?

"Issue No. V:

"Did respondent erroneously determine that taxable income shown in petitioners returns for year 1946 resulting from sale in 1946 of First National Bank and Southwestern Life Insurance Co. stocks were understated?"

With regard to Issue No. I above, Title 26 U.S.C.A. § 22(c) provides that whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary of the Treasury, may prescribe as conforming as nearly as possible to the best accounting practice in the trade or business and "as most clearly reflecting the income." Pursuant to this provision the Commissioner has adopted extensive regulations dealing with inventories required to be kept by taxpayers for income purposes.[1] These regulations, like Section 22(c) of the Internal Revenue Code, require that the inventory must conform as nearly as may be to the best acounting practice in the trade or business, and that it must clearly reflect the income.[2] Section 29.22(c)–5 of Treasury Regulations 111, which applies especially to dealers in securities, provides that such a dealer who in his books of account regularly inventories unsold securities on hand either (a) at cost, (b) at cost or market, whichever is lower, or (c) at market value, may make his return upon the basis on which his accounts are kept.

The inventories kept by petitioner Wood as a "dealer in securities" did not conform to either of those three methods. Although he apparently attempted to keep inventories on the basis of cost, it is clear

---

1. See Treasury Regulations 111, Secs. 29.-22(c)–1 to 29.22(c)–8 and Sections 29.22 (d)–1 to 29.22(d)–7, inclusive.

2. See Treasury Regulations 111, Sec. 29.-22(c)–2.

that the cost method was not used by him. Each lot of securities purchased was treated separately—and no profit was accounted for until the entire lot was disposed of. When only a portion of a particular lot of securities was sold the proceeds were applied against the cost of the entire lot and the cost of the remaining shares reduced accordingly. When a part of a particular lot of securities remained unsold at the end of the taxable year they were included in inventory at the reduced cost figures (or at an increased cost figure if the part of the lot disposed of was sold at a loss). Clearly this method of keeping inventory did not accurately reflect the cost of securities on hand at the end of each tax year, although it conceivably might do so over a period of several years.

Furthermore, the method of keeping inventories used by this taxpayer did not clearly reflect income from sales, as required by the statute and the regulations. This would be impossible without some definite record of the cost of securities actually sold during the taxable year—which was not reflected in the method used by the taxpayer. In fact, taxpayer admits that because of the sale of partial lots of securities purchased the various shares of stock which he held became commingled and intermingled in such manner that "it was a practical impossibility * * * to identify the cost separately of the shares that entered into each sale."

Under these circumstances the Commissioner was warranted in using the first-in first-out method to determine the cost of securities on hand at the close of the taxable years 1944 and 1945 here involved.

Taxpayer's principal reliance seems to be upon the consistency with which he kept his inventories. However, as the Tax Court pointed out, mere consistency loses its virtue where, as here, the inventory fails to reflect income. Cf. Pittsburgh Bridge & Iron Works v. Heiner, D.C., 25 F.2d 900. It is essential that the inventory clearly reflect the income and the burden is upon the taxpayer to prove that the determination of the Commissioner is erroneous. Wilson v. Commissioner, 10 Cir., 76 F.2d 476; Finance & Guaranty Co. v. Commissioner, 4 Cir., 50 F.2d 1061. This he failed to do.

The second issue involved, specifically stated, is whether taxpayer Wood's closing inventory for 1944 should be reduced by the sum of $176.76, which amount represents the allocated cost of four shares of First National Bank stock which he transferred to his wife in that year. Taxpayer argues that no adjustment to his stock inventory was warranted in this connection because the four shares transferred from inventory to his wife had previously been received as part of a stock dividend with a basis of zero, and therefore transferring them "from inventory at no cost during the year would in no way alter the total cost of inventory held at end of the year;" that the deficiency was erroneously assessed because the transaction was treated by respondent as a sale when actually the shares were never sold but merely transferred on his books to his wife's name without any substantial disposition thereof being effected for tax purposes. It is without dispute, however, that these four shares were actually removed from inventory to the account of taxpayer's wife and that taxpayer never reduced the inventory cost of this stock by the value of the shares transferred. The essential requirement of consistency in maintaining adherence by taxpayers to accounting methods and bookkeeping entries which at all times clearly reflect the true disposition of income compels us to recognize that the Commissioner has a broad discretion to reallocate income in such cases, and in this instance we agree that when these shares were transferred, whether to an investment account, as a gift to his wife, or by sale, their allocated cost should have been deducted from the cost of the stock still held in inventory, thus increasing net income for the year 1944 by that amount. Title 26 U.S.C.A. § 22(c); see also Sec. 113(a)(19)(A)(ii); Treasury Regulations 111, Sections 29.113(a)(12)–1(1) and 29.113(a)(19)–1(a).

The Tax Court found with regard to Issue No. III that in 1928 taxpayer acquired 30 shares of Realty Trust Company stock which he transferred to his wife. These shares were not held for re-

sale to customers, and were never included in taxpayer's inventory after 1928. In 1944 the Realty Trust Company was liquidated and taxpayer's wife received the proceeds thereon. The cost of the stock when acquired in 1928 was $1,060 and the amount received in 1944 was $420 resulting in an undisputed loss of $640. The disputed issue is of course whether taxpayer is entitled to treat this transaction as an ordinary loss deductible in full, or only as a long-term capital loss deductible on a 50% basis, as contended by respondent. In this connection, we agree with the Commissioner and the Tax Court that the manner in which the liquidation transaction was treated for bookkeeping purposes [3] does not overcome the fact that these shares of stock were actually held for investment or speculation and not for sale to customers in the ordinary course of business. Treasury Regulations 111, Sec. 29.22(c)–5. As such they clearly constituted a capital asset within the meaning of Section 117(a) and (b) of the Internal Revenue Code, the loss on disposition of which was limited to 50%. 26 U.S.C.A. § 117(a) and (b).

█ Issue No. IV is concerned with the question of whether taxpayer proved a deductible loss in 1945 upon the sale of residence property located in Dallas, Texas, which had been converted into rental property on or about January 1, 1947. In determining this issue adversely to taxpayer the Commissioner used as the basis for determining gain or loss the value of the property at the time it was converted to income-producing purposes in January, 1947, rather than the original cost to taxpayer. See Heiner v. Tindle, 276 U.S. 582, 48 S.Ct. 326, 72 L.Ed. 714; Section

29.23(e)–1 of Treasury Regulations 111. The taxpayer now concedes that gain or loss on such sale should properly be computed on the basis of its fair market value upon conversion, rather than on the basis of its original cost, and the only question which remains for our consideration on this issue is whether the evidence was sufficient to overcome the determination of fair market value of this property by the Commissioner and the Tax Court. Taxpayer contends in brief that the fair market value of this property upon conversion was $7,000,[4] and as proof of this valuation now offers for our consideration evidence as to appraisals of the property which he claims were made by real estate experts in the community. However, these appraisals were not introduced in evidence and the only testimony concerning them is taxpayer's own, which we believe the Tax Court was warranted in rejecting as vague and unconvincing. Taxpayer has thus failed to sustain his burden of proving the determination of the Commissioner and the Tax Court clearly erroneous in this regard. Burford-Toothaker Tractor Co. v. Commissioner, 5 Cir., 192 F.2d 633; Guggenheim v. Helvering, 2 Cir., 117 F.2d 469, 474.

█ The final issue is whether the Tax Court erred in holding that the cost of certain shares of First National Bank stock and stock in Southwestern Life Insurance Company sold by taxpayer in 1946 should be computed on the basis of the first-in first-out method. Here again we think taxpayer has failed to carry his burden of proof. It is without dispute that he failed at the hearing to identify the securities which he sold in 1946.[5] Taxpayer in oral

---

3. Taxpayer again urges here, as in Issue No. II, that these shares were merely "transferred from the books to his wife", not to be regarded "as a sale or gift to her" but merely as a part of their community property, and that such a transfer was without effect for tax purposes. This argument ignores the fact that these shares of stock were never purchased or held as an ordinary asset for resale to customers, nor were they ever included in taxpayer's stock inventory after their purchase in the year 1928. The fact that the stock might have been sold

at any time had a favorable offer been received did not change its character from a security held for investment or speculation to an ordinary asset.

4. The Commissioner determined the fair market value of the land with the improvements thereon upon conversion was $5,700.00.

5. The Tax Court held that taxpayer had failed to prove the identity of these shares, although it conceded that "petitioners' brief sets forth such alleged identity."

argument and brief before this court asserts facts purporting to reveal the identity of the shares in question, but these asserted facts are not substantiated by any record evidence. While we have no doubt as to taxpayer's good faith in offering such proof at this time, nevertheless in the absence of any record proof of identity of the shares sold we are not authorized to disturb the Commissioner's determination of cost on the basis of the first-in first-out method and the same is hereby sustained.

The decision of the Tax Court on all issues is hereby affirmed.