OPINION. Black, Judge: Capital Gains Issue. At the hearing of this proceeding petitioner abandoned certain issues raised in his petition, and respondent on his part conceded certain errors in his determination of the deficiencies. Effect will be given to these concessions in a recomputation under Kule 50. The question involved with regard to the gain realized from the sale of the houses is whether-or not the gain is ordinary income or capital gain. The answer depends upon whether the houses were “property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.” The respondent contends that they were and that all the gain is therefore taxable as ordinary income. The petitioner contends that the houses were held for rental investment purposes, that he was not in the business of selling houses, and that the sales were incident to a liquidation of investment property and, therefore, all the gain should be taxed as capital gain. The applicable section of the Internal Eevenue Code of 1939 is set out below.[1] The question is essentially one of fact with no single factor being decisive. The purpose for which the property was acquired; the sub-stantiality, frequency, and continuity of sales; the nature and extent of the taxpayer’s business; the activity of the taxpayer and those acting for him; and the treatment of the property in the taxpayer’s records are all to some extent determinative of the purpose for which the property was held during the period in question. In Nelson A. Farry, 13 T. C. 8 (1949), and Walter B. Crabtree, 20 T. C. 841 (1953), we recognized that a taxpayer may occupy the dual role of a dealer in real estate and an investor in real estate. We believe the facts in this case warrant the same treatment. See D. L. Phillips, 24 T. C. 435. The petitioner admittedly was in the business of building and selling houses prior to the construction of the houses in question. The sale of some of the houses upon completion and the sale of others shortly after the restrictions on sale were removed are clear indications that he remained in that business. The petitioner, on the other hand, had for some time been in the process of accumulating rental investment property. We think the evidence clearly establishes that fact. His rental income further substantiates his role as an investor. The problem here is to segregate the houses sold into their proper categories. With regard to the houses sold in 1945 and 1946 on the installment basis, we do not believe that the petitioner has proved that they were not held for sale to customers in the ordinary course of trade or business. The 28 houses sold in 1945 without prior rental were clearly held for sale. Petitioner’s own testimony was to that effect. The 12 houses sold in 1946 were rented upon completion, but by law they had to be rented. They were held for a short time after the restrictions were removed. The record indicates that they were all probably 2-bedroom houses. Petitioner’s own testimony was to the effect that the 2-bedroom houses were rented because of the restrictions. The fact is that they were all sold when completed or in the year following the removal of restrictions. See Rollingwood Corporation v. Commissioner, (C. A. 9, 1951) 190 F. 2d 263. We, therefore, hold that the installment gains realized in 1947 of $4,338.79 and $4,361.11 from 1945 and 1946 sales and the installment gains realized in 1948 of $1,525.87 and $3,872.83 from 1945 and 1946 sales were ordinary income. Kespondent’s determination as to these items is sustained. With regard to the 23 houses sold in 1947 and the 24 houses, sold in 1948, we believe that the facts show that they were held for investment purposes. The group of 23 were all 3-bedroom houses. The 3-bedroom houses were a good investment. They rented for about $20 more per unit, while they cost only slightly more than the 2-bedroom houses. They were retained in 1946 while all of the 2-bedroom houses in the 134-house group were being sold. Most of them were rented for at least 2 years before they were sold. The 24 houses that were sold in 1948 were not subject to any restrictions when they were built in 1946. The petitioner was not required to invest any of his own funds in order to build them. He borrowed all the money from the F. H. A. They were small houses and easy to rent. They were all rented from the time of their completion in 1946 until their sale in the first half of 1948. The petitioner had good reason to sell both groups of property. He was incurring considerable expenses incident to his wife’s illness. He entered the motel business in Arizona at a cost of $54,000 in order to have a business near his wife. Later he expended about $50,000 in enlarging the facilities of this motel. He was also transferring all of his investments to multiple-unit dwellings which were easier for an absent owner to manage. The facts indicate to our satisfaction that his decision to sell was based on these factors and that prior to the sales he was holding the property in question for rental investment purposes. The sales were incident to a liquidation in order to transfer his holdings to other types of investment and to relocate in Arizona. Walter B. Crabtree, supra. The fact that his income from sales was greater than his income from rentals does not mean that all property sold was held primarily for sale in the ordinary course of trade or business. Cf. Delsing v. United States, (C. A. 5, 1951) 186 F. 2d 59,61. We therefore hold that the gains in 1947 of $65,539.62 from completed sales and $4,617.74 from installment sales made in 1947, and the gains in 1948 of $19,053.29 from installment sales made in that year and $7,917.54 from completed sales in 1948, and $471.60 realized gains in 1948 from installment sales made in 1947, were long-term capital gains rather than ordinary income. Petitioner’s assignments of error to this extent are sustained. Bad Debt Issue. The question of whether the loans of $9,753.77 and $1,065 which became worthless in 1947 and 1948, respectively, were business or non-business bad debts is essentially a question of fact. The applicable provision of the Internal Revenue Code of 1939 is noted below.[2] The bad debt of $9,753.77 on the load to E. P. Bradley, the petitioner’s nephew, was incurred in circumstances which we believe not to be connected with trade or business. The petitioner had a vacant store which the nephew wanted to rent so that he could open up a grocery store. He lacked funds so the petitioner lent him the money to equip and stock the store, taking back a mortgage. The record does not show that the store could not otherwise have been rented. Petitioner’s own testimony was that he lent the nephew the money to help him go into business. Although we do not doubt that the transaction was at arm’s length, we believe that it was a personal loan and that the bad debt was not incidental or proximately related to the business of the taxpayer. The fact that there was security for the debt is immaterial since the security was not a security as defined in section 23 (k) (3) of the 1939 Code. The bad debt of $1,065 incurred on the debt of Nichols was also a nonbusiness bad debt. The petitioner has not pressed the issue in his brief and it is clear that it was a personal loan. The petitioner’s own testimony verifies that. The fact that Nichols had sold him lumber in the 1930’s when lumber was difficult to obtain does not remove it from that category. It is the debt relation to the taxpayer’s business at the time that it became worthless that is controlling. Pegs. Ill, sec. 29.23 (k)-6. Depreciation Issue. The question involved with regard to the depreciation is whether the rates allowed by the respondent are reasonable. The applicable provision of the 1939 Code is set out below.[3] The three 4-unit frame apartments on Pershing Street were of average construction. The respondent in his brief concedes that 3 per cent would appear to be a reasonable allowance. We agree with this conclusion. Since the other 4-unit brick apartment was depreciated at the rate of 2½ per cent, the 3 per cent rate on these frame apartments would be a reasonable allowance for the year 1948. The respondent allowed a depreciation rate of 2½ per cent on the Atlanta Highway 4-unit brick apartment. The petitioner has not introduced any evidence to show that that rate is not reasonable. The Decatur Street store building was about 25 years old when purchased. It was a frame building but was completely remodeled and enlarged. The only testimony introduced was to the effect that the old part of the building had a useful life of 25 years and the newer part, a useful life of 45 to 50 years. Petitioner has not proved the cost of each part, and we hold that the rate of 2½ per cent for the entire building, as allowed by the respondent, is reasonable. The respondent allowed depreciation at the rate of 3 per cent on the stucco frame motel in Arizona. Part of the motel was 8 or 10 years old while the other part was newly constructed. The rate of 3 per cent on the new part is clearly reasonable. Since the older part was remodeled and reconditioned, the same rate would also be reasonable for that part. The petitioner failed to claim depreciation for the adobe house in Arizona that he rented for 6 months in 1948. The house was well built and was several years old when purchased in 1946 for $15,000. Petitioner is entitled to a depreciation allowance for the 6-month rental period. A rate of 2½ per cent is reasonable under the circumstances. Decision will he entered under Bule 50. SEC. 117. CAPITAL GAINS AND LOSSES. (j) Gains and losses From Involuntary Conversion and From the Sale ob Exchange ob Cektain Property Used in the Trade or Business.— (1) Definition of property used in the trade or business. — For the purposes of this subsection, the term “property used in the trade or business” means property used in the trade or business, of a character -which is subject to the allowance for depreciation provided in section 23 (1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not * * * (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * * (2) General rule. — If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. * * * SEC. 23. deductions FROM GROSS INCOME, (k) Bad Debts.— ***** * • (4) Non-bdsiness debts. — In the case of a taxpayer, other than a corporation, If a non-businesB debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt” means a debt other than a debt evidenced by a security as defined In paragraph (3) and other than a debt the loss from the worthlessness of which Is Incurred In the taxpayer’s trade or business. SEC. 23. DEDUCTIONS FROM GROSS INCOME. (1) Depreciation. — A reasonable allowance for the exhaustion, wear and tear (Including a reasonable allowance for obsolescence)— (1) of property used In the trade or business, or (2) of property held for the production of Income.