Paul CARRUTH and Myra Carruth,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. 1018.

United States District Court
S. D. Texas,
Brownsville Division.

July 26, 1957.

Kelley, Looney, McLean & Littleton, Rogers Kelley, Edinburg, Tex., for plaintiffs.

Thomas H. Foye, Atty., Dept. of Justice, Washington, D. C., Malcolm R. Wilkey, U. S. Atty., Houston, Tex., for defendant.

HANNAY, Chief Judge.

This is a suit to recover income taxes in the sum of $6,171.72 plus both deficiency and ordinary interest alleged to have been illegally assessed and collected from the taxpayers for the calendar year of 1949. The sole question for decision is whether a profit from the sale of real estate, to wit, Villa Verde Subdivision, was subject to tax as income derived from the sale of capital assets or as ordinary income.

Paul Carruth and wife, Myra Carruth, in their joint income tax return for 1949 claimed the disputed item of $6,-171.72 as capital gain income. A representative of the Bureau of Internal Revenue held that such gain was ordinary income. The tax was paid and claim for refund was timely made. Thereafter the claim not having been allowed, this suit was seasonably filed.

For convenience, reference will hereafter be made to Paul Carruth as the taxpayer and no further reference will be made to his wife.

The Internal Revenue Code of 1939, then Section 117, under the heading of "Capital Gains and Losses," reads as follows:

"(a) Definitions. As used in this chapter—

"(1) Capital assets. The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * *

property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; * * * * " 26 U.S.C. 1952 ed., Sec. 117. (This is now Section 1221, Rev. Laws of 1954.)

It will be noted that by the express terms of the Statute the "property [must be] held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." Therefore, it is necessary that both elements of being held primarily for sale and to customers in the ordinary course of business of the taxpayer must concur in order to subject the income derived from the sale thereof as ordinary income.

The taxpayer relies upon the stipulations on file herein, the written exhibits admitted herein, and the oral testimony of the taxpayer himself and of a certified public accountant, B. S. Mothershead.

From the above, I find the facts to be that the taxpayer moved to Harlingen, Texas in 1938 and soon thereafter entered in business as a mortgage-loan broker. Since that time, he has been continuously and busily engaged as such mortgage-loan broker. He has also been engaged in the business of acquiring real estate for rental and investment purposes, which business he has likewise continued at all times material hereto. The gross receipts derived from both the mortgage-loan business and the business of acquiring real estate for rental and investment purposes are reflected by the stipulations and exhibits, particularly Plaintiffs' Exhibits 3, 6 and 7.

In 1940 and 1941, taxpayer acquired a portion of a subdivision in Harlingen known as Finwood Heights; he attempted to, and did, sell some of the lots in that subdivision in 1940, 1941 and up to February, 1942; but at no time, except from 1940 to 1942, did the taxpayer engage in any sales activity as to any of his properties. From 1938 up to the present time taxpayer never listed any properties with any agent or broker for sale, nor advertise any of his properties for sale, nor erect any "For Sale" signs on any of his properties, nor place any im-

provements on any of his properties in contemplation of offering same for sale. Such sales as he did make from and after 1942 were upon the initiative and solicitation of prospective buyers; that such purchases that he made during this period were for investment or speculation or rental income purposes and were made where the taxpayer believed that he was purchasing at a low or bargain price. Taxpayer did obtain a real estate dealer's license following the enactment and effective date of the first Texas Real Estate Dealers License Act of 1939, Vernon's Ann.Civ.St. art. 6573a, § 1 et seq., because at the time he thought it might become important to have such license and because he had an opportunity to come under the "grandfathers" clause; that he later learned it was necessary to have such license in his dealings with insurance and loan companies as a mortgage-loan broker but he never operated at any time as real estate agent, dealer or broker under his license; that many of the conveyances by him as grantor and as grantee between 1940 and 1949 were correction deeds, accommodation deeds for other parties or other transactions where the taxpayer had no financial interest.

In 1944, taxpayer organized Casa Guerra, Inc., a Texas corporation. Except for two qualifying shares, he owned all the stock of said corporation. The name Casa Guerra in Spanish means "War Housing," and such corporation was formed for the purpose of subdividing, building and selling housing projects during World War II. The corporation did not have a sales agency but contracted with a real estate agent or broker and builders who built houses, handled all sales, and all the corporation did was arrange for loans, execute the deeds and pay the broker and/or builder a commission for each house sold. This was because the loan companies and the Federal Housing Administration wanted to deal with a corporation rather than an individual, and also because the taxpayer did not care to incur so much personal liability which the projects would have involved.

All the business of this corporation was handled separately and apart from the taxpayer's mortgage-loan business. There was a separate bank account and separate books kept by the corporation, and the corporation was a going concern from its organization in 1944 until its dissolution in 1950; it acquired properties from sources other than the taxpayer, and it made income tax returns for each year of its existence and paid income tax every year except two when its returns showed that it owed no taxes.

The taxpayer acquired the property here in question in two tracts, one consisting of 17.85 acres of land on February 6, 1946, and one consisting of 6.32 acres of land on May 27, 1946. The tracts adjoined each other and were situated at the edge or on the outskirts of the town of Brownsville, Texas. The property at the time of its purchase was raw, brush acreage. Thereafter, taxpayer had the land cleared of the underbrush, saving some shade trees, had the land surveyed and platted for residential purposes, and purchased and installed some sewer tile. Such improvements amounted to the sum of $6,282.50.

The price at which the taxpayer purchased said property was what he considered to be a very desirable one from an investment standpoint. At the time taxpayer purchased such land, he had considered that it might be possible to use it as an industrial development because of its proximity to railroad tracks. At no time before the sale to Casa Guerra in 1949 did the taxpayer in any way attempt to sell any part of the tract or to list any part of it for sale or to advertise any part of it for sale; nor did he erect on such property "For Sale" signs and/or a sales office and he made no sale of individual lots or any other part of the land until he sold the entire acreage to Casa Guerra. It is thus seen that the attitude of the taxpayer with reference to the sale of the

property here involved was entirely passive.

In Smith v. Commissioner of Internal Revenue, 5 Cir., 232 F.2d 142, at page 145, it was said:

> " * * * There was no effort made to sell * * *. There was no campaign. There was no solicitation or sales drive. There was no advertising. * * * "

The property was not held primarily for sale nor was it held for sale or sold "to customers in the ordinary course of business of the taxpayer."

■■ There is no inflexible rule or set formula by which a case of this kind is to be determined. Each case must be determined from its peculiar facts, as was well set out by Judge Connally in the case of Houston Deepwater Land Co. v. Scofield, D.C., 110 F.Supp. 394, at page 398, as follows:

> "To remove the sale of an asset from the capital gains provision, the statute requires (a) that the taxpayer be engaged in the trade or business of making such sales; (b) that he have customers in the course of such business; and (c) that the asset be held *primarily* for sale to such customers in the ordinary course of such business. To meet these requirements, at least a minimum of selling and of sales activity must be present. While this will vary from case to case, in every instance it must be sufficient so that it may reasonably be said that the taxpayer is engaged in the business, has customers in such business, and that the property is held primarily for sale to such customers in the course thereof. * * * "

Applying this rule on the authority of the following Fifth Circuit cases, to wit, United States v. Robinson, 5 Cir., 129 F.2d 297; Fahs v. Crawford, 5 Cir., 161 F.2d 315; Foran v. Commissioner, 5 Cir., 165 F.2d 705; Dunlap v. Oldham Lumber Co., 5 Cir., 178 F.2d 781; Delsing v. U. S., 5 Cir., 186 F.2d 59; Lobello v. Dunlap, 5 Cir., 210 F.2d 465; Smith v. Dunn, 5 Cir., 224 F.2d 353; Smith v. C. I. R., 5 Cir., 232 F.2d 142, I am of the opinion and so hold that the judgment should be and hereby is for the plaintiffs.

The foregoing is adopted as findings of fact and conclusions of law. Clerk will notify counsel.

Since there was a delay in filing this memorandum opinion from the time of the pronouncement of same, the date of the opinion is fixed at today, July 26, 1957.