**Paul CARRUTH and Myra Carruth, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1159.**

United States District Court
S. D. Texas,
Brownsville Division.

July 25, 1958.

1. Old streambeds usually used for storage of water in the Rio Grande Valley.

Kelley, Looney, McLean & Littleton, Rogers Kelley, Edinburg, Tex., for plaintiffs.

J. J. Kilgariff, Sp. Asst. to U. S. Atty. Gen., William B. Butler, U. S. Atty., Houston, Tex., Brian S. Odem, Asst. U. S. Atty., Brownsville, Tex., for defendant.

ALLRED, District Judge.

Action by plaintiff taxpayers, husband and wife, for refund of income taxes alleged to have been illegally assessed and collected from them for the calendar year 1952, in the sum of $1,455.22, plus both deficiency and ordinary interest.

The taxes involved were assessed and collected by the Bureau of Internal Revenue in connection with profits derived from the sales of four certain tracts of land by the plaintiffs during the years 1950, 1951 and 1952, and from the sale of one tract of land by the partnership of Paul Carruth and W. Vernon Walsh, in 1950, as follows:

1. The partnership on July 28, 1950, sold and conveyed a tract of land comprising approximately 108.90 acres, largely surrounded by resacas,[1] out of the Santa Rosa tract, near Brownsville, Texas, to the Rio Viejo Corporation for $150,000, to be paid in installments. Carruth and Walsh owned 45% of the stock of said corporation and 55% of the stock was owned by Clint Murchison and Dwight Taylor, who financed the transaction and financed the subdivision of said property by such corporation. In 1952, $16,380.27 was collected on the contract of which $10,195.08 was the amount of full gain reported. One-half of such gain, $5,097.54, was distributable to plaintiffs and was reported in their income tax return for the year 1952 as a long term capital gain.

59.25 acres of said tract had been acquired by the partnership on March 15,

Frontage on these resacas is very desirable in the lower Rio Grande Valley.

1946, by purchase, for investment purposes. On April 19, 1949, the partnership had received a quitclaim deed from the grantors of the 59.25 acres, conveying all of their remaining right, title, interest; and of all claim, title or right to reverter in said tract, for no additional cash consideration. During October 1949, the partnership also acquired by purchase two small tracts consisting of approximately 4.0 acres, contiguous to the other acreage.

2. On September 23, 1950, plaintiff, Paul Carruth, sold and conveyed to A. A. Gianfala .20 acres out of Tract 20, Share 19, Espiritu Santo Grant, which Carruth had owned for several years. This sale was made at the specific request and solicitation of the said A. A. Gianfala, who had discovered that a portion of one of his buildings had erroneously been constructed on the Carruth property; and said plaintiff agreed to convey a portion of said property to the said Gianfala. The sale was consummated on an installment basis and plaintiffs reported a capital gain in their individual tax return for 1952, in the amount of $380.

3. Plaintiff, Paul Carruth, received 37 lots in the Villa Verde Subdivision, Brownsville, Texas, from Casa Guerra, Inc., on December 26, 1950, in exchange for a debt of $27,247.94 owed him by Casa Guerra, Inc. On November 30, 1951, one of these lots was sold on an installment basis by the taxpayer to a Mr. Mendez, who had specifically requested and solicited the purchase of said lot through W. Vernon Walsh. The amount collected on this sale in 1952 was $507.50 and the gain included therein in the amount of $83.01, was reported by plaintiffs in their 1952 income tax return as capital gain.

4. On September 5, 1951, at the specific request and solicitation of W. E. Heaner, Brownsville, Texas, a lumberman and builder, plaintiff, Paul Carruth, contracted to deliver him a number of lots in the Villa Verde Subdivision, Brownsville, Texas, at a fixed schedule of prices when and as the said Heaner would need them for building purposes. During the year 1952, 24 of these lots were conveyed by Carruth to Heaner, in accordance with such agreement and plaintiffs realized a gain of $1,057.58 on the sale of these 24 lots, and this gain was reported in their income tax return for 1952 as a capital gain transaction.

5. In January 1941, plaintiff, Paul Carruth, had acquired a building site described as the East 15 feet of Lot 4, all of Lot 5 and the West 20 feet of Lot 6, Block 42, Finwood Heights Addition to the City of Harlingen, Texas. At the specific request and solicitation of W. P. Briscoe, Carruth sold and conveyed said building site to Briscoe in November 1952 for a consideration of $2,018.75. Plaintiffs realized a gain which was reported as a capital gain in their income tax return for 1952 on the transaction in the amount of $990.25.

A representative of the Bureau of Internal Revenue held that the gains reported upon the above described five sales was ordinary income. The tax was paid and claim for refund was timely made. Thereafter, the claim not having been allowed, this suit was seasonably filed.

Plaintiff taxpayers rely upon the stipulations on file herein, the written exhibits admitted herein, and the oral testimony by plaintiff, Paul Carruth, W. Vernon Walsh, W. P. Briscoe, W. E. Heaner and a certified public accountant, B. S. Mothershead. Plaintiffs also refer to a Memorandum Opinion of Judge Allen B. Hannay filed in this Court in C.A.No. 1018 on July 26, 1957, in a case to recover income taxes for the calendar year of 1949 styled "Paul Carruth and Myra Carruth, Plaintiffs, v. United States of America, Defendant", involving the same identical parties and some of the same facts and issues involved herein. 167 F.Supp. 294. A copy of such opinion in that cause is ordered filed in this action for all purposes.

From the above, the court finds the facts as follows:

1. Plaintiff, Paul Carruth, moved to Harlingen, Texas, in 1938 and entered

into business as a mortgage-loan broker. Since that time, he has been continuously engaged in such business. He has also been continuously engaged, individually, and in various partnerships, in the business of acquiring real estate for rental and investment purposes. The gross receipts derived from both the mortgage-loan business and the business of acquiring real estate for rental and investment purposes are reflected by the stipulations and exhibits, particularly Plaintiffs' Exhibits 10 and 11.

2. A partnership known as Paul Carruth and W. Vernon Walsh was organized on or about April 1, 1944, and acquired and later sold and conveyed to the Rio Viejo Corporation 108.90 acres of land out of the Santa Rosa Tract, Brownsville, Texas, as set out hereinabove.

3. Plaintiff, Paul Carruth, acquired and later sold the other parcels of land involved herein as set out hereinabove.

4. From 1938 up to the present, Carruth did not list any properties with agents or brokers for sale, or advertise any of his properties for sale, or erect any "For Sale" signs on any of his properties, or place any improvements on any of his properties in contemplation of offering them for sale. Such sales as he did make from and after 1942, and particularly during 1950, 1951 and 1952, were upon the initiative and solicitation of prospective buyers. The purchases he made during all periods involved in this action were for investment or speculation or rental income purposes. Carruth did obtain a real estate dealer's license following the enactment and effective date of the first Texas Real Estate Dealers License Act,[2] because at the time he thought it might become important to have such license and because he had opportunity to come under the "Grandfather's Clause." He later learned it was necessary to have such license in his dealing with insurance and loan companies as a mortgage-loan broker, but he never operated at any time as a real estate agent, dealer or broker under his license. Many of the conveyances as grantor and as grantee, between 1940 and 1952 were correction deeds, accommodation deeds for other parties, or other transactions where he had no financial interest.

5. The partnership of Paul Carruth and W. Vernon Walsh did not at any time engage in any sales or promotional activity as to any of its properties. It did not list any of its properties, particularly the above described acreage in the Santa Rosa Tract, with any agent or broker for sale, or advertise, or improve, any of its properties, in contemplation of offering same, for sale. At the time of the original acquisition of the main portion of the Santa Rosa Tract, by the partnership, in March, 1946, business conditions generally in and around Brownsville, Texas, were poor and the partnership did not contemplate utilizing said property for subdivision purposes. They acquired it for investment purposes. It was not until the fall of 1948 when business conditions began to improve sharply in the Brownsville area, due to industrial activities, that the partners began to see a potential value of the tract for subdivision purposes. Thereafter they acquired the two small tracts of land hereinabove described and the reverter interest of the grantors, from the City of Brownsville, as well as quitclaim deed from the city itself. Neither of the partners individually, nor the partnership, was fiancially able to, nor did they desire to assume the personal financial responsibility of, subdividing said property.

They accepted an offer of outside financial assistance, for the liquidation of this investment, from Clint Murchison and Dwight Taylor and the Rio Viejo Corporation was organized and set up, and the property located in the Santa Rosa Tract was sold and conveyed by the partnership to the corporation as hereinabove set out. The cor-

2. Acts 1939, 46th Leg. p. 560, Art. 6573a, Vernon's Texas Civil Statutes.

poration did not have a sales agency, but entered into an exclusive sales contract with W. Vernon Walsh, individually, a real estate agent, for the promotion and sales of the subdivision properties. The partnership did not participate or share in any way in the sales of any of the lots after the conveyance of the properties to the corporation.

The sole question for decision is whether profits from the above enumerated sales were subject to tax as income derived from the sale of capital assets or as ordinary income. The determination of this question depends upon whether such properties were or were not held by the taxpayer, Paul Carruth, and by the partnership of Paul Carruth and W. Vernon Walsh, following their acquisition up to and including 1952, primarily for sale to customers in the ordinary course of his and their trade or business.

The Internal Revenue Code of 1939, then Section 117, under the heading of "Capital gains and losses", reads as follows:

"(a) Definitions. As used in this chapter—

"(1) Capital assets. The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *" (26 U.S.C. 1952 ed., Sec. 117.) (This is now Section 1221, Rev.Laws of 1954, 26 U.S.C. § 1221.)

It will be noted that by the express terms of the statute the property must be held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Therefore, it is necessary that both elements of being held primarily for sale and to customers in the ordinary course of business of the taxpayer must concur in order to subject the income derived from the sale thereof as ordinary income.

In determining whether a taxpayer is engaged in business, for purposes of application of the definition of "capital assets" the Courts have adopted a number of tests and yardsticks, such as frequency and continuity of sales, the extent to which the owner engaged in sales activities such as developing or improving the property, soliciting customers, advertising, the history of the property, the reasons for or purpose of and the method or nature of the acquisition of the property, the length of time the property was held, the reason for disposition of the property, and the general conduct of the operation.[3]

## Conclusions of Law

1. Plaintiff, Paul Carruth, did not hold the tracts of land involving the four transactions above described, primarily for sale to customers in the ordinary course of trade or business within the definition of Section 117(a) (j) of the Internal Revenue Code of 1939.

2. The partnership of Paul Carruth and W. Vernon Walsh did not hold the Santa Rosa Tract of land primarily for sale to customers in the ordinary course of their trade or business within the definition of Section 117(a) (j) of the Internal Revenue Code of 1939.

Judgment will be for plaintiffs.

The foregoing is adopted as Findings of Fact and Conclusions of Law. The Clerk will notify counsel to submit an order accordingly.

3. Wood v. Commissioner, 5 Cir., 197 F.2d 859; Houston Deepwater Land Co. v. Scofield, D.C.Tex., 110 F.Supp. 394; United States v. Robinson, 5 Cir., 129 F. 2d 297; Fahs v. Crawford, 5 Cir., 161 F. 2d 315; Foran v. Commissioner, 5 Cir., 165 F.2d 705; Dunlap v. Oldham Lumber Co., 5 Cir., 178 F.2d 781; Delsing v. United States, 5 Cir., 186 F.2d 59; Lobello v. Dunlap, 5 Cir., 210 F.2d 465; Goldberg v. Commissioner, 5 Cir., 223 F.2d 709; Smith v. Dunn, 5 Cir., 224 F.2d 353; Ross v. Commissioner, 5 Cir., 227 F.2d 265; Smith v. Commissioner, 5 Cir., 232 F.2d 142.