### WALKER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9790.

Circuit Court of Appeals, Sixth Circuit.

Dec. 4, 1944.

Hilary H. Osborn, of Nashville, Tenn., for petitioner.

Bernard Chertcoff, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, A. F. Prescott, and Irving R. Panzer, all of Washington, D. C., on the brief), for respondent.

Before HICKS, HAMILTON and MARTIN, Circuit Judges.

HICKS, Circuit Judge.

Petition of J. H. Walker to review a decision of the Tax Court, affirming the action of the Commissioner of Internal Revenue in assessing against petitioner deficiencies in income taxes of $411.91 and $260.64 for the years 1938 and 1939, respectively.

The evidence before the Tax Court consisted of stipulated facts and the testimony of the petitioner. Petitioner filed returns for the years involved, on the cash receipts and disbursements basis.

By virtue of his stock ownership in the Monterey Realty Company and the Monterey Hardwood Flooring Company, he was active in the hardwood lumber and hardwood flooring businesses. The Realty Company owned a large acreage of coal and timber lands upon which it operated sawmills in the production of hardwood lumber. The Flooring Company, a separate corporation, manufactured this lumber into flooring. In addition to petitioner's stock interest in these companies, he individually owned and controlled from 3500 to 4000 acres of coal and timber lands adjoining the Realty Company's property. The Monterey Company, a third corporation, was organized in 1921 with 75 or 80 stockholders. Originally it had a capital stock of $10,000 divided into 100 shares of the par value of $100. Petitioner owned two shares of the original issue. The Monterey Company owned a tract of 230.72 acres approximately in the center of the properties owned and controlled by petitioner through his stock ownership in the Realty Company and Flooring Company and his individual ownership of adjacent lands. The Monterey Company was a nonoperating corporation. Upon its property was a lake adapted to various recreational purposes and it was the original plan of the Company to sell its property as a whole or to sell lots around the lake for summer homes. The by-laws provided that any stockholder owning at least two shares could use the lake. The Company exhausted its capital in building a dam and clearing adjacent lands and it became necessary to increase its stock to $20,000 divided into shares of $100 each, which were purchased principally by the original stockholders.

The development failed and on November 4, 1937, the Monterey Company leased its property to petitioner for a term of ten years from January 1, 1938, at an annual rental of $600, payable in advance. Petitioner was required to pay the taxes upon the property and had the right to exclusive swimming, boating, fishing and hunting privileges on the lake, or to sublet these privileges. By the terms of the instrument petitioner was granted the right to purchase the property at any time, within the life of the lease, at a price of $20,000, payable one-fourth in cash and the balance in equal payments due in 1, 2 and 3 years, with interest at 6%.

Petitioner took possession on January 1, 1938, and from time to time acquired additional shares of the stock of the Monterey Company, paying less than par value therefor. At the time of the hearing before the Tax Court he owned 79 shares which he had purchased at low prices and he continued to purchase as opportunity offered. He purchased quite a number of the shares after he leased the property. He testified that he was buying the stock for development; that the tract was in the center of the timbered lands of the companies in which he owned a majority interest; that he had 3500 acres surrounding the property. He further testified that he had no other purpose than to develop it along lines that would make a profit for himself. He testified as follows:

"Q. Did you ever intend developing it for purposes of sale? A. That is my only intention.

"Q. To sell it? A. Yes, sir, and sell the land. The land of the companies I am associated with that own around it.

"Q. That is your intention, to develop it for the purpose of selling it? A. Yes sir.

"Q. Then paragraph 9: 'It is understood and agreed one of the lessee's purposes in obtaining this lease is to establish and maintain a pleasure resort upon the leased boundary.' Was that your intention at the time? A. That was my intention at the time, and is yet.

"Q. To maintain a pleasure resort on it? A. I didn't intend to maintain it, no.

"Q. You are going to sell it? A. I will sell it or lease it because I am not in that line of business. * * *"

Again he testified:

"Q. Mr. Walker, you stated to Mr. Thompson that you did not have in mind or it was not your purpose to conduct a pleasure resort on this land? A. No sir.

"Q. Did you have in mind that you might lease it to someone else for that purpose? A. That was my idea, that I would either sell it or lease it to somebody for that kind of purpose.

"Q. Was that one of your original purposes in acquiring this land? A. Yes, sir, and to increase the value of other land and the timber we had surrounding it."

He explained in substance that he paid $600 per annum, or 3% of the stipulated purchase price of $20,000, as rental because this was cheaper than to purchase at $20,000 and pay 6% interest on the notes. He said: "I just arrived at those figures, figuring it would be cheaper for me to do it that way rather than to buy it, due to the fact that I might buy up some of the stock."

In 1938, in connection with the lease, petitioner expended $42.95 for attorney fees, registration fees, and revenue stamps; $293.98 for labor repairing the dam; $4.50 for posting against trespassers; $331.52 for guards against trespassing and fires; and in 1939 he expended $11.51 for revenue stamps, registration fees and blueprints; $157 for labor; and $182.50 for a caretaker. In each year he paid the annual rental of $600. The total expended for 1938 and 1939, respectively, was $1272.95 and $951.01. These items claimed as deductions were disallowed by the Commissioner and his action was sustained by the Tax Court.

We find no reason to disagree with the decision. We must follow the "now familiar rule that an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer." Interstate Transit Lines v. Commissioner of Internal Revenue, 319 U.S. 590, 593, 63 S. Ct. 1279, 1281, 87 L.Ed. 1607. We do not think that petitioner has successfully carried the burden imposed upon him.

His contention is that the Tax Court erred in holding that the claimed deductions were not allowable under Sec. 23 (a) (1) (A), of the Internal Revenue Code as amended by Sec. 121(a) of the Revenue Act of 1942, Ch. 619, 56 Stat. 798.[1] It is

---

1 "Sec. 23 (As amended by Section 121 (a) of the Revenue Act of 1942, c. 619, 56 Stat. 798) DEDUCTIONS FROM GROSS INCOME.

"In computing net income there shall be allowed as deductions:

"(a) Expenses.

"(1) Trade or business expenses.

"(A) In general. All ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued

manifest that the deductions are not allowable under Sec. 23(a) (1) (A). The payments for which the deductions were claimed were not paid or incurred as expenses either in connection with petitioner's business as a lumberman or with any business carried on by him upon the leased property. The Tax Court so held and the holding is conclusively sustained by the evidence.

■ It is just as obvious that the deductions were not allowable as "ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income * * *," from the leased property, as provided under subsection 2 of Sec. 23(a). Petitioner has not shown that he produced or collected any income from this property for the years involved.

■ The crux of the case is, whether deductions were allowable under subsection 2 of Sec. 23(a) as "ordinary and necessary expenses paid * * *" for the management, conservation or maintenance of property held for the production of income. The question narrows to whether petitioner held the leased property during the years involved for the production of income. The Tax Court decided that he had failed to so show and this holding has substantial support in the record. It is true that Sec. 9 of the lease sets out that it was understood that one of petitioner's purposes in obtaining it was to establish and maintain a pleasure resort thereon, but the court considered this feature in connection with petitioner's testimony, as hereinabove set forth, and concluded that the expenditures were a part of a plan to acquire the Monterey Company's property. It further held that in its judgment the petitioner had failed to show that the expenditures were "for the management, conservation, or maintenance of property held for the production of income."

■ These findings were not arbitrarily made. They were based upon substantial evidence or lack of evidence and could have been reasonably arrived at. Wilson v.

Commissioner of Internal Revenue, 10 Cir., 76 F.2d 476, 478. We are not authorized to consider contrary inferences that might have been indulged in by the Tax Court. Helvering v. National Grocery Co., 304 U. S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346. In the light of the record we must accept the findings as conclusive (Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 600, 51 S.Ct. 608, 75 L.Ed. 1289) and in the absence of a "clear-cut mistake of law" the decision must stand. Dobson v. Commissioner of Internal Revenue, 320 U. S. 489, 502, 64 S.Ct. 239, 247.

In view of these findings it is unnecessary to determine whether the amounts expended by petitioner were capital expenditures. Interstate Transit Lines v. Commissioner of Internal Revenue, supra, 319 U.S. 590, 594, 63 S.Ct. 1279, 87 L.Ed. 1607.

Affirmed.

---

use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.
* * * * * * *
"(2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses

paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.
* * *" 26 U.S.C.A. Int.Rev.Code, § 23 (a) (1) (A), (2).