## Herschel H. Hoopengarner and Roberta S. Hoopengarner, Petitioners v. Commissioner of Internal Revenue, Respondent

Docket No. 14462–79.     Filed March 21, 1983.

*Warren Sikora,* for the petitioners.
*Rosa Berman,* for the respondent.

### OPINION

Sterrett, *Judge*: By statutory notice dated July 6, 1979, respondent determined a deficiency of $8,379 in petitioners' Federal income tax for their 1976 taxable year. After concessions, the sole issue for decision is whether certain lease payments made by petitioners in 1976 are deductible under section 162(a), I.R.C. 1954, or alternatively, under section 212.

The facts have been fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners Herschel H. Hoopengarner and his wife, Roberta S. Hoopengarner, resided in San Clemente, Calif., at the time of filing the petition herein. They timely filed their 1976 joint Federal income tax return with the Internal Revenue Service Center, Fresno, Calif. Roberta Hoopengarner is a party to this proceeding solely by reason of having filed a joint return with Herschel H. Hoopengarner (hereinafter petitioner).

During the year in issue, petitioner was employed by Penn Mutual Life Insurance Co. In April of 1976, he acquired by

assignment a leasehold interest in a parcel of undeveloped land in Irvine, Calif., from Troy Associates, Ltd., for $67,500. No part of this payment was deducted on petitioner's 1976 return. The lease originally was entered into by the Irvine Co., as lessor, and Troy Associates, Ltd., as lessee, for a period of 55 years, commencing November 1, 1973. Thus, petitioner's term was for approximately 52½ years.

Under the terms of the lease, rent for the entire year was due in advance on November 1 of each year. On April 27, 1976, petitioner paid $9,270.56 into an escrow account for the rent attributable to the period from October 15, 1975, to October 31, 1976. Of this amount, $4,524.03 was attributable to the period from April 27, 1976, to October 31, 1976. On December 1, 1976, petitioner paid $8,974.10 to the Irvine Co. to cover the rental period from November 1, 1976, to October 31, 1977. The foregoing payments were ordinary and necessary expenses.

The lease provided that the lessee was to construct and operate an office building on the leased premises, both of which would ultimately revert to the lessor. Construction of the building began in February of 1977 and was completed by September of 1977. Petitioner, as lessor of the office building, entered into a lease agreement in December 1976 with his employer Penn Mutual Life Insurance Co. However, Penn Mutual did not move into the building until November of 1977. Petitioner received no rent in 1976. Another tenant, Red Jacket, took possession in September of 1977.

On a schedule entitled "Rental and Royalty Income" attached to his 1976 return, petitioner claimed a deduction from gross income for rental payments made to Irvine Co. in the amount of $10,767.[1] In his notice of deficiency, respondent denied this deduction on the ground that the lease payments were "pre-opening expenses."

Petitioner contends that the lease payments made by him are deductible under section 162(a)(3), or, in the alternative, under section 212. Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Such expenses can include rental payments. Sec. 162(a)(3).

_____

[1]This amount apparently represents the rent attributable to the period Oct. 15, 1975, to Dec. 31, 1976.

While we have already found as a fact that the rental payments were ordinary and necessary, we cannot find as a fact, in the circumstances here present, that the petitioner made those payments "for the purposes of the trade or business" as required by section 162(a)(3). The acquisition of the leasehold interest and the securing of a tenant during 1976 were not events of sufficient magnitude to put petitioner in the office building rental trade or business. Simply put, his rental business had not started to function in the year before us and he was, in fact, in the act during that year of incurring what has been termed "preopening expenses." See *Richmond Television Corp. v. United States*, 345 F.2d 901 (4th Cir. 1965), vacated and remanded on other issues 382 U.S. 68 (1965); *Bennett Paper Corp. v. Commissioner*, 78 T.C. 458 (1982), affd. 699 F.2d 450 (8th Cir. 1983, 83–1 USTC par. 9208); *Goodwin v. Commissioner*, 75 T.C. 424, 433 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982). Accordingly, we must sustain respondent's determination that section 162 does not permit the deduction of the expenses under consideration.[2]

However, all is not lost for petitioner because the disqualifying fact, just discussed in terms of section 162, is irrelevant when we turn to a consideration of the applicability of section 212. There is no requirement in that latter section that the taxpayer be in a trade or business, and, indeed, the perceived need for the omission of such requirement is the raison d'etre for its enactment. *United States v. Gilmore*, 372 U.S. 39 (1963).

Section 212(2) allows a deduction all ordinary and necessary expenses paid or incurred for the management, conservation, or maintenance of property held for the production of income. Again, we note our finding that the rental payments were ordinary and necessary. Thus, the question remains whether such payments were incurred for the management, conserva-

---

[2]Petitioner makes fleeting reference to other alleged rental properties as a predicate for arguing that he was already in the rental trade or business when he acquired the lease for the Irvine property. No evidence of his activities with respect to those other properties appears, however, other than in his 1976 return wherein he attempted to deduct under sec. 162(a) expenses incurred in connection with the "San Clemente property" and the "Palm Springs property." Petitioner has not contested respondent's determination that no rental losses are allowable with respect to those other properties. No other evidence whatsoever about the use of these properties was provided. Similarly, petitioner has not produced sufficient evidence to establish any meaningful relationship between his continuing employment with Penn Mutual Life Insurance Co. and his proposed office rental business.

tion, or maintenance of property held for the production of income.

The property that was held in this case was not the land or the building, it was the leasehold interest, upon which annual payments were due.[3] This interest was acquired by petitioner with but a single objective in mind: to generate recurring income in the near future. No profound leap of legal logic is necessary for us to conclude that the lease was purchased and subsequently held for the production of income.

During 1976, petitioner received no income from his leasehold acquisition. However, this does not preclude deductibility. Section 1.212–1(b), Income Tax Regs., provides that "income" as used in section 212 includes income which the taxpayer "may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property." See H. Rept. 2333, 77th Cong., 1st Sess. (1942), 1942–2 C.B. 372, 430. Thus, expenses incurred with respect to property held for the production of future recurring income, as well as for future appreciation, may be deductible under section 212(2). *Horrmann v. Commissioner*, 17 T.C. 903, 908 (1951); *Robinson v. Commissioner*, 2 T.C. 305, 308–309 (1943). We find that petitioner held the lease for the production of future income for purposes of section 212(2).

We are conscious that there is a requirement under section 212 that the taxpayer have a proprietary or possessory interest in the income-producing property. See *Walet v. Commissioner*, 31 T.C. 461, 472 n. 1 (1958), affd. 272 F.2d 694 (5th Cir. 1959); *Frank v. Commissioner,* 20 T.C. 511, 514 (1953); *Beck v. Commissioner*, 15 T.C. 642, 670 (1950), affd. 194 F.2d 537 (2d Cir. 1952); *Weinstein v. United States*, 190 Ct. Cl. 437, 420 F.2d 700, 702 (1970). We have found that petitioner met this requirement by virtue of his ownership of the lease. We are unable to find authority for an additional requirement that such property be currently capable of producing income. This is clearly not the rule in the case of property that is held for investment. However, section 1.212–1(b), Income Tax Regs., is not limited to this latter situation but embraces both the holding of property for future recurring income and the

---

[3]See, e.g., *Artukovich v. Commissioner*, 61 T.C. 100, 107 (1973).

holding of property for investment within its confines. To hold that current deductions are not allowable with respect to property held for the production of income would require us to ignore the plain language of this regulation.[4] Accordingly, we find that the conditions for the deductibility of the expenses in dispute have been met under section 212(2).

We are also cognizant of the fact that an expenditure that is otherwise deductible under section 212 cannot be deducted if it is capital in nature. Sec. 1.212–1(n), Income Tax Regs.; sec. 1.263(a)-1, Income Tax Regs. An expenditure resulting in the acquisition of an asset or benefit having an economically useful life of more than 1 year is normally considered to be a capital expenditure. Sec. 1.263(a)-2(a), Income Tax Regs.; *Colorado Springs National Bank v. United States*, 505 F.2d 1185, 1191–1192 (10th Cir. 1974); *W. H. Tompkins Co. v. Commissioner*, 47 B.T.A. 292, 295 (1942). Here, the rent paid during 1976 did not produce any equity that survived a year beyond the time that the payment was made. The possessory right received by petitioner in return for the rent attributable to 1976 was, of course, wholly consumed during that year and did not augment, or in any way increase, the value of the building constructed in 1977.[5] The benefit derived from the rental expenditure was extinguished at the end of the year to which the payment related. Virtually, by definition, the rent is not a capital expenditure.[6]

---

[4] The question of whether property is held for the production of current or future income, when it is not producing current income, is one of intent. See *Coors v. Commissioner*, 60 T.C. 368, 410 (1973), affd. 519 F.2d 1280 (10th Cir. 1975); *Walet v. Commissioner*, 31 T.C. 461, 473 (1958), affd. 272 F.2d 694 (5th Cir. 1959). Here, petitioner's income-producing objective is not disputed.

[5] See, in this connection, the analysis in *Daniel v. Commissioner*, T.C. Memo. 1978–277 (37 T.C.M. 1180, 1183–1184, 47 P-H Memo T.C. par. 78,277 (1978)).

[6] This conclusion does not run afoul of *Commissioner v. Idaho Power Co.*, 418 U.S. 1 (1974). In that case, the Supreme Court held that depreciation of transportation equipment used in the construction of capital assets constitutes part of the cost of acquiring those capital assets and therefore must be capitalized. The issue of whether an expense is construction-related turns on the individual facts. Here, the lease payments were not construction-related since they did not hasten the completion or enhance the value of the building. One of the factors influencing the Court was that "capitalization of construction-related depreciation by the taxpayer who does its own construction work maintains tax parity with the taxpayer who has its construction work done by an independent contractor." *Commissioner v. Idaho Power Co.*, *supra* at 14. In this respect, we fail to see how requiring petitioner to include the lease payments in his basis in the building would put him on an equal footing with anybody. Moreover, petitioner did not himself construct the building, but rather had his "construc-

Respondent asserts that the so-called "pre-opening doctrine," applicable to investigatory and startup expenses that would otherwise be deductible under section 162, supersedes section 212. However, as we have noted, the latter section, unlike section 162, has no "trade or business" requirement.[7] Therefore, since pre-opening means "prior to the commencement of a trade or business," the doctrine has no applicability in section 212 context.[8]

By our decision, we do not presume to resolve the numerous incongruities in this area of the law. In many cases, judicial precedent can be found to support either of two diametrically opposed propositions.[9] We do not attempt to address these contradictions; we only intend that this decision resolve the

---

tion work done by an independent contractor." *Idaho Power* simply was not intended to extend to the instant facts. As a further note, we might add that it would seem anomalous to require petitioner to capitalize payments made for a possessory interest in land as part of the basis of a building constructed on that land. The two should not be confused.

[7]It is not enough to say that sec. 212 is coextensive in most respects with sec. 162. This proposition means only that deductions under sec. 212 are conditioned by the requirement that they must be ordinary and necessary (*Trust of Bingham v. Commissioner*, 325 U.S. 365, 373–374 (1945)), and that they cannot result from capital expenditures (*Woodward v. Commissioner*, 410 F.2d 313, 318 (8th Cir. 1969), affd. 397 U.S. 572 (1970)), or from personal expenditures (*United States v. Gilmore*, 372 U.S. 39, 46 (1963)).

[8]If it were applicable, then the doctrine conceivably could be used to disallow any sec. 212(2) deductions on the ground that the level of the taxpayer's activities with respect to the property being held might someday elevate him to trade or business status.

Under the test for determining whether a taxpayer is in a trade or business announced by this Court in *Ditunno v. Commissioner*, 80 T.C. 362 (1983), almost any sec. 212 activity can be transformed into a sec. 162 activity by intensification of the taxpayer's participation in the activity. Thus, every sec. 212 activity is an inchoate sec. 162 activity. In this respect, the operation of a single piece of rental property may constitute a trade or business (*Lagreide v. Commissioner*, 23 T.C. 508, 512 (1954); *Hazard v. Commissioner*, 7 T.C. 372, 376 (1946)), or may constitute the holding of property for the production of income (*Robinson v. Commissioner*, 2 T.C. 305, 308 (1943)). Conversely, if the taxpayer's activities are sufficiently passive, the operation of a multiunit apartment complex might give rise to sec. 212(2) deductions. See *Scott v. Commissioner*, T.C. Memo. 1979–29. It is also possible for a trade or business to slip into sec. 212 status. See *Daniel v. Commissioner*, T.C. Memo. 1978–277.

[9]Compare, for example, *379 Madison Avenue, Inc. v. Commissioner*, 60 F.2d 68, 69 (2d Cir. 1932); *Carter-Colton Cigar Co. v. Commissioner*, 9 T.C. 219, 221 (1947); *Blitzer v. United States*, docket No. 426–76 (Opinion of Trial Judge, Ct. Cl. 1981, 47 AFTR 2d 81–1005, 81–1 USTC par. 9262), adopted 231 Ct. Cl. ___, 684 F.2d 874 (1982); and *United States v. Manor Care, Inc.*, 490 F. Supp. 355, 362 (D. Md. 1980), with *Richmond Television Corp. v. United States*, 345 F.2d 901, 907 (4th Cir. 1965); and *Goodwin v. Commissioner*, 75 T.C. 424, 433 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982), among others; and compare *Oster v. Commissioner*, T.C. Memo. 1964–355; and *Colman v. United States*, an unreported case (D. Utah 1961, 9 AFTR 62–406, 62–1 USTC par. 9241), with *Frank v. Commissioner*, 20 T.C. 511, 514 (1953), and *Weinstein v. United States*, 190 Ct. Cl. 437, 420 F.2d 700, 702 (1970). Generally speaking, the decisions which can be cited as supporting an opposite result to the one reached herein involved a situation where many expense items were lumped together and treated as an entity. In some instances included in the mass was a

narrow issue before us, the treatment of an expense that is uniquely temporal. Our conclusion results from what we believe to be a straightforward application of the regulations under section 212 to the precise facts of this case.

A relatively minor detail remains to be resolved. Petitioner deducted rental payments of $10,767 on his 1976 return. Of the $9,270.56 paid by petitioner on April 27, 1976, and fully deducted on his return, the accrued rent attributable to the period prior to the time that petitioner acquired the leasehold is not deductible as current rent but rather constitutes part of the lease acquisition cost. Petitioner appears to have conceded as much.

Most of the rental payment made on December 1, 1976, was attributable to the 1977 taxable year. Petitioner has correctly argued that such payment is fully deductible in 1976 under *Zaninovich v. Commissioner*, 616 F.2d 429 (9th Cir. 1980), revg. 69 T.C. 605 (1978), which we are constrained to follow under the rule of *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Thus, according to the Ninth Circuit's position in *Zaninovich*, petitioner should be entitled to a $13,498.13 rental deduction in 1976. Accordingly, there is no need for us to reconsider our holding in *Zaninovich*.

Respondent contends that petitioner's deduction is limited by the amount set out in his pleadings, $10,767. However, we find that the issue of the deductibility of payments attributable to 1977 was tried by the consent of the parties, and therefore the pleadings need not be amended to reflect this fact. Rule 41(b)(1), Tax Court Rules of Practice and Procedure. To require petitioner to amend his pleadings to take into account the amount at stake under the issue tried by mutual consent would make Rule 41(b)(1) meaningless.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

---

rental payment, but we are unaware of any case where that particular item, rent allocable to the year at issue, was focused on in terms of its deductibility under sec. 212(2).

COHEN, *Judge*, dissenting: I respectfully dissent from the opinion of the majority insofar as it allows the taxpayer to circumvent the pre-opening expense rules that the majority acknowledges apply to a trade or business.

There is no doubt that the taxpayer, here, intended to engage in the trade or business of operating an office building, and that he was utilizing the land subject to the ground lease for the purpose of constructing such a building. Indeed, most of his brief is devoted to the argument that he was engaged in that trade or business during the taxable year. He argues, and I agree, that operation of a single piece of rental real property may constitute a trade or business. *Lagreide v. Commissioner*, 23 T.C. 508 (1954); *Hazard v. Commissioner*, 7 T.C. 372 (1946).

Under similar circumstances, this Court has held that a taxpayer cannot avoid the pre-opening expense rules by claiming a deduction under section 212. For example, in *Graybeal v. Commissioner*, T.C. Memo. 1979–506, the Court held that the taxpayers could not deduct expenses incurred in anticipation of opening of a recreational vehicle (RV) campground[1] because the "petitioners were not yet, if ever, in the 'trade or business' of operating an RV campground at the time the claimed expenses were incurred and are thus not entitled to deduct such expenses under section 162." The Court stated:

Petitioners argue on brief that, if the expenses are not deductible under section 162, then they are deductible under section 212 as expenses paid or incurred during the taxable year on property held for the "production of income". We believe this argument to be without merit. Petitioner-husband specifically testified that the expenses here in issue were expenses in

---

[1]The claimed loss consisted of the following items:

| | |
|---|---|
| Depreciation | $618.00 |
| Repairs | 74.61 |
| Salaries and wages | 48.00 |
| Insurance | 282.00 |
| Interest on business debt | 2,016.67 |
| Other (telephone, etc.) | 2,453.83 |
| | 5,493.11 |
| Other labor | 495.34 |
| Total loss | 5,988.45 |

connection with the development of the facilities for the RV park. He further testified that they were not in connection with the farm rental property.

Further the RV campground was not rental property until January 1974. While the property was apparently leased to the family corporation in 1973, rents were not charged during that year. Petitioners clearly had two separate activities occurring on the same piece of property. One part was the farm rental business and the second was the development of an RV park. The expenses here in issue, according to petitioner-husband's testimony and the evidence presented, clearly were connected with the development of the RV park.

Accordingly, the expenses by petitioners are capital expenditures and thus not deductible. Respondent's determination as to this issue is sustained.

Similarly, in *Swigart v. Commissioner*, T.C. Memo. 1980–379, after determining that expenses relating to a proposed mobile home camp were not deductible because the facilities were only in the preliminary stages of development during the years in question, the Court stated:

Nor does the record contain sufficient evidence that the mobile homes were being held for the production of income, independently of the claimed trade or business in respect of camping and recreational facilities, so as to sustain a deduction under section 212. Indeed, if anything, the evidence points in the opposite direction, namely, that the mobile homes were intended to be an integral part of the aforesaid claimed trade or business or for the personal use of the [taxpayer's] sons. * * *

See also *Frank v. Commissioner*, 20 T.C. 511, 514 (1953).

The expenses, here, were obviously not intended to be personal, but the lease was an integral part of the rental trade or business contemplated by the taxpayer at the time the expenses were incurred. I submit that this case is indistinguishable from *Walker v. Commissioner*, 145 F.2d 602, 605 (6th Cir. 1944), affg. a Memorandum Opinion of this Court. In that case, the taxpayer leased certain real property and attempted to deduct under the predecessor of section 212 certain expenses incident to that real property *including rental paid under the lease*. The Court of Appeals stated:

The question narrows to whether petitioner held the leased property during the years involved for the production of income. The Tax Court decided that he had failed to so show and this holding has substantial support in the record. It is true that Sec. 9 of the lease sets out that it was understood that

one of petitioner's purposes in obtaining it was to establish and maintain a pleasure resort thereon, but the court considered this feature in connection with petitioner's testimony * * * and concluded that the expenditures were a part of a plan to acquire the * * * [property of the lessor corporation]. * * *

The taxpayer in the *Walker* case had acquired the lease and was attempting to acquire stock of the lessor corporation with the ultimate intention of developing land owned by the corporation.

Section 212 is not a catchall for deduction of all nonpersonal expenses. Section 212 is coextensive in most respects with section 162. *Trust of Bingham v. Commissioner*, 325 U.S. 365 (1945) (discussing predecessors of the two sections); and petitioner may not deduct expenses under section 212 that could not be deducted under section 162(a) were they connected to a trade or business. *Beck v. Commissioner*, 15 T.C. 642, 669 (1950), affd. per curiam 194 F.2d 537 (2d Cir. 1952). As this Court recently noted:

"except for the requirement of being incurred in connection with a trade or business," * * * a deduction under section 212 "is subject * * * to all the restrictions and limitations that apply in the case of the deduction under * * * [section 162(a)] of an expense paid or incurred in carrying on any trade or business."

*Estate of Davis v. Commissioner*, 79 T.C. 503, 507 (1982), quoting H. Rept. 2333, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 372, 430, and S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 504, 571, the legislative history to the predecessor of section 212. The phrase "carrying on" in section 162 is the language that creates the timing requirement therein; only the "trade or business" requirement of section 162 is missing in section 212. A temporal requirement is implied in section 212 by the requirement that the *property be "held" for the production of income at the time the expense is incurred*. Thus, in applying section 212 in other contexts, we have said:

There is a basic distinction between allowing deductions for expenses in connection with taxable income or income-producing property in which one already has an existing interest or right, on the one hand, and expenses incurred in an attempt to obtain income by the creation or acquisition of some new interest, on the other hand. *Frank v. Commissioner*, 20 T.C. 511, 514 (1953); *Beck v. Commissioner*, 15 T.C. 642, 670 (1950), affd. per curiam 194 F.2d 537 (2d Cir. 1952), cert. denied 344 U.S. 821 (1952).

*Contini v. Commissioner*, 76 T.C. 447, 452 (1981).

Petitioner's announced intention, ultimately carried into effect in this case, was to acquire an interest in an office building constructed on leased land and to operate the office building as a business. He was *required* to build a building under the terms of the lease; obtaining the lease and paying the rental were merely preliminary steps. He did not, during the tax year in question, "hold" the lease for the purpose of producing income; he was fulfilling his part of the contract and constructing an asset that later would be used in the rental trade or business.

The majority here seems to believe that ground rents are somehow unique, inasmuch as they are recurring and are designated as rentals incurred for particular time periods. It is inaccurate and not conclusive of the issue to say that "the rent paid during 1976 did not produce any equity that survived a year beyond the time that the payment was made." Payments on a lease are payments for acquisition of an "estate-for-years" in the land. See C. Moynihan, Introduction to the Law of Real Property 64 (1962). Each payment is necessary to the acquisition of the whole interest. Long-term ground leases are in many localities the only means of acquiring land. In California, where this property was located, 55 years, the original term of the subject lease, is the maximum legal term of a lease of property held by, or under management and control of, a municipal body. Cal. Civ. Code sec. 718 (West 1981). The lease payments thus are essentially equivalent in this respect to payments of interest and principal in purchasing the land. See section 1.1031(a)–1(c), Income Tax Regs., wherein a lease of more than 30 years is treated the same as a fee interest in real property. See also note 5 *infra.*

We have rejected the contention that items that cannot be expected to provide benefits beyond the taxable year are not subject to the pre-opening expense rules, which require capitalization of rents,[2] salaries,[3] and other "ordinary and

---

[2]E.g., *Bennett Paper Corp. v. Commissioner*, 78 T.C. 458 (1982), affd. 699 F.2d 450 (8th Cir. 1983); *Kennedy v. Commissioner*, T.C. Memo. 1973–15.

[3]E.g., *Madison Gas & Electric Co. v. Commissioner*, 72 T.C. 521 (1979), affd. 633 F.2d 512 (7th Cir. 1980).

necessary" expenses clearly deductible on a current basis once the business has commenced.[4] Moreover, any idea that such items cannot be considered capital should have been abandoned after the Supreme Court opinion in *Commissioner v. Idaho Power Co.*, 418 U.S. 1 (1974), which reversed a Ninth Circuit holding to the contrary and reinstated this Court's determination that depreciation of equipment used to self-construct capital improvements for use in the taxpayer's trade or business had to be capitalized as part of the cost of the improvements. The Court stated in part:

> There can be little question that other construction-related expense items, such as tools, materials, and wages paid construction workers, are to be treated as part of the cost of acquisition of a capital asset. The taxpayer does not dispute this. Of course, reasonable wages paid in the carrying on of a trade or business qualify as a deduction from gross income. Sec. 162(a)(1) of the 1954 Code, 26 U.S.C. sec. 162(a)(1). But when wages are paid in connection with the construction or acquisition of a capital asset, they must be capitalized and are then entitled to be amortized over the life of the capital asset so acquired. * * *
>
> Construction-related depreciation is not unlike expenditures for wages for construction workers. The significant fact is that the exhaustion of construction equipment does not represent the final disposition of the taxpayer's investment in that equipment; rather, the investment in the equipment is assimilated into the cost of the capital asset constructed. Construction-related depreciation on the equipment is not an expense to the taxpayer of its day-to-day business. It is, however, appropriately recognized as a part of the taxpayer's cost or investment in the capital asset. * * * By the same token, this capitalization prevents the distortion of income that would otherwise occur if depreciation properly allocable to asset acquisition were deducted from gross income currently realized. [418 U.S. at 14; citations omitted.]

The Court went on to discuss "an additional pertinent factor," i.e., that of maintaining tax parity between taxpayers. If the taxpayer, here, had acquired the land on the basis of purchase, incurring interest and principal payments during the period of construction, he would be required to capitalize the greater portion of such payments.[5] No demands of equity suggest that

---

[4]See *Goodwin v. Commissioner*, 75 T.C. 424, 434 n.8 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982).

[5]Sec. 189, I.R.C. 1954, as amended, has contravened statutes permitting deduction of interest and taxes by requiring amortization of construction period interest and taxes. A

this taxpayer should be treated more favorably than such purchaser.

The majority found that petitioner qualified for a deduction under section 212 "by virtue of his ownership of the lease." But I do not see how this contractual interest is property superior to the contractual interests held by the taxpayers in the pre-opening expense cases (e.g., *Goodwin v. Commissioner*, 75 T.C. 424 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982) (partnership agreement; financing agreements); *Madison Gas & Electric Co. v. Commissioner*, 72 T.C. 521 (1979), affd. 633 F.2d 512 (7th Cir. 1980) (joint venture agreement; construction permit issued by the Nuclear Regulatory Commission); *Bennett Paper Corp. v. Commissioner*, 78 T.C. 458 (1982), affd. 699 F.2d 450 (8th Cir. 1983) (membership applications and deposits); or *Kennedy v. Commissioner*, T.C. Memo. 1973–15 (pharmaceutical license)). In almost all new businesses, taxpayers enter into leases or suppliers' contracts or contracts with potential customers or obtain franchises or exclusive agency agreements. To say that the contract is the income-producing asset and the expenses relating to that are deductible is to create chaos among those attempting to decide cases on principle rather than on the level of imagination utilized by the taxpayer. In my opinion, the approach of the majority will create new "incongruities in this area of the law," which can only constitute a renewed inducement to controversy and an impediment to settlement of litigation.[6]

TANNENWALD, FEATHERSTON, IRWIN, WILBUR, CHABOT, NIMS, and HAMBLEN, *JJ.*, agree with this dissenting opinion.

---

special transitional rule applied to 1976 that permitted a deduction of 50 percent of the expenses that previously had been deductible in full. Sec. 189(f). The balance would be amortizable at 16⅔ percent per year.

[6]The Senate Finance Committee stated, as its reason for the enactment of section 195, that:

"The committee believes that the provision for the amortization of business startup and investigatory expenses will encourage formation of new businesses and decrease controversy and litigation arising under present law with respect to the proper income tax classification of startup expenditures [S. Rept. 96–1036, at 11 (1980).]"