LLOYD I. AND FERN W. HOLMES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Holmes v. Commissioner
Docket No. 4343-81.
United States Tax Court
T.C. Memo 1983-442; 1983 Tax Ct. Memo LEXIS 346; 46 T.C.M. (CCH) 872; T.C.M. (RIA) 83442; July 27, 1983. *346 In 1978 petitioners hired two persons to guard their personal residence in Ecuador in order to deter burglary attempts. Held, amounts paid for such purpose constitute personal expenses which do not give rise to a deduction. Also during 1978 petitioner-wife traveled to the United States. Held, a portion of the travel expenses are not deductible under sec. 212, I.R.C. 1954, since they were either predominantly personal or capital in nature and since petitioners failed to satisfy the strict substantiation requirements of sec. 274(d). Lloyd I. and Fern W. Holmes, pro se. Elizabeth S. Henn, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated January 22, 1981, respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1978 in the amount of $3,685.29. After concessions the issues for decision are: (1) whether the expense incurred by petitioners to hire persons to protect their personal residence in Ecuador is deductible pursuant *348 to section 212, I.R.C. 1954; and (2) whether expenses incurred by petitioner Fern W. Holmes to travel to the United States from Ecuador during 1978 are deductible as investment expenses. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Lloyd I. and Fern W. Holmes resided in Bogota', Colombia at the time of filing the petition herein.They filed a joint Federal income tax return for the taxable year 1978 with the Office of the Director, Internal Revenue Service. During 1978 petitioner Mr. Holmes was an agricultural attache' at the American Embassy in Quito, Ecuador.Because of the high crime rate in Ecuador at the time, petitioners hired two persons to protect their residence there during 1978. Their desire was to assure that there was someone present in their household at all times in order to deter burglary attempts. One of the persons hired by petitioners was a woman who lived in their residence during 1978. In addition to "housesitting" as a security precaution, this woman also was required to perform certain housekeeping services for *349 petitioners. Petitioners also hired a man to keep watch over the residence. He came to the house two to three times a week and usually was stationed on the outside part of the yard in order to provide a visible deterrent to crime. This man, who worked in the neighborhood, stood watch for petitioners whenever they needed him. Neither he nor the woman carried firearms. Petitioner Mr. Holmes' employer, the United States Government, did not recommend during 1978 that petitioners obtain a guard for their residence. During 1978 petitioners rented property in Falls Church, Virginia that previously had been their personal residence. This was the only real estate rental activity engaged in by petitioners during that year. Because petitioners were out of the country, they hired a management agency to manage the rental of the Falls Church property. During the year in question, petitioner Mrs. Holmes made a trip originating in Ecuador with stops in Falls Church, Virginia; Richmond, Virginia; Salt Lake City, Utah; and Logan, Utah. Her first stop was Virginia. During her stay there, Mrs. Holmes visited her daughter in Richmond, Virginia for approximately 15 days and also went to Falls *350 Church, Virginia in order to inspect petitioners' rental property. After her stay in Virginia, Mrs. Holmes traveled to Utah, where she remained for approximately 15 days. She went to Logan, Utah to visit her son, who resided there. Mrs. Holmes also went to Salt Lake City to investigate property for possible purchase. At the time of Mrs. Holmes' visit, petitioners intended to purchase property in Utah for use upon their retirement or as a possible investment. They bought a home there in July of 1979. That home currently is being rented by them. Mrs. Holmes did not keep any diary or account book documenting the travel expenditures incurred on her trip to Virginia and Utah. In computing their travel expense deduction, petitioners allocated the expenses according to the comparative number of days Mrs. Holmes spent investigating property and the number of days she spent visiting her children. On their income tax return for 1978, petitioners deducted an expense for security guards in the amount of $2,894.52. They also claimed a deduction for travel expenses attributable to Mrs. Holmes' trip to Virginia and Utah in the amount of $1,125. In his statutory notice, respondent *351 disallowed these deductions in their entirety. OPINION The first issue for decision is whether the expenditure incurred by petitioners to hire persons to be present in and around their home as a precautionary measure against crime is deductible pursuant to section 212(2). That section allows a deduction for all ordinary and necessary expenses paid or incurred for the management, conservation, or maintenance of property held for the production of income. There is no evidence that petitioners' personal residence in Quito, Ecuador was itself held for the qualifying purpose under section 212(2). It is clear that expenses incurred with respect to a personal residence are not deductible pursuant to section 212. See section 1.212-1(h), Income Tax Regs. Such expenses constitute personal expenses which do not give rise to a deduction. Section 262. See also Contini v. Commissioner,76 T.C. 447, 453 (1981). Although we do not question the wisdom of petitioners' decision to hire security personnel to guard their home during 1978 in Ecuador, it is clear that such expenses are personal expenses and therefore nondeductible. Petitioners contend that they stored valuable *352 papers in the house. We accept their statement and wish that they had been more precise with respect to the nature of the papers and the expense related directly to their safekeeping. Unfortunately they did not favor us with such evidence. Accordingly, we hold for respondent on this issue. The second issue for decision is whether some portion of the travel expenses incurred by Mrs. Holmes during her trip to the United States in 1978 is deductible. The evidence reveals that Mrs. Holmes spent most of her time during her trip to the United States visiting relatives. With respect to her trip to Virginia, Mrs. Holmes spent a predominant part of her time visiting her daughter in Richmond. There was testimony that she spent some unspecified period of time inspecting the rental property owned by petitioners in Falls Church.It appears that all Mrs. Holmes did during such inspection was to make sure that the management company was doing its job. Based on this evidence, we believe that the primary or dominant purpose of her trip to Virginia was to visit her daughter and therefore was personal in nature and her inspection of the rental property was merely secondary and incidental to this *353 purpose. Such minor and relatively insignificant attention to a business matter cannot convert what is a personal family-oriented trip into a deductible business trip. See International Artists, Ltd. v. Commissioner,55 T.C. 94, 104-105 (1970). Accordingly, expenses associated with this trip are nondeductible personal expenses. [1]
With respect to her trip to Utah, we also believe that the primary purpose of such trip was to visit her relatives. Additionally, no part of such expenses are deductible travel expenses since they were incurred prior to the acquisition of the property investigated.It is established that one must have a proprietary or possessory interest in income-producing property as a prerequisite to deductibility of expenses attributable thereto under section 212(1) or section 212(2). Section 1.212-1(g), Income Tax Regs.; Hoopengarner v. Commissioner,80 T.C. 538, 541 (1983); Contini v. Commissioner,supra at 452. *354 Accordingly, because such amounts were expended prior to the acquisition by petitioners of a proprietary or possessory interest in the residence in Utah, they either constitute personal expenses under section 262 or capital expenditures under section 263. Nicolazzi v. Commissioner,79 T.C. 109, 123 (1982). In either case, they are not currently deductible, Frank v. Commissioner,20 T.C. 511, 514 (1953). Additionally, in order for travel expenses to be deductible under section 212, they must be substantiated in accordance with the strict substantiation requirements of section 274(d). Petitioners have failed to submit such substantiation to this Court and, therefore, have not satisfied this specific prerequisite to the deductibility of travel expenses. For the above-stated reasons, the travel expense deduction taken by petitioners must be disallowed. It may be that, for reasons of geographical separation, bureaucratic mistakes or whatever, petitioners exchange of information with respondent was unsatisfactory to them, but that deficiency cannot, in and of itself, turn the law in petitioners' favor. To reflect the foregoing, Decision *355 will be entered under Rule 155.
Footnotes
1. See Cole v. Commissioner,T.C. Memo. 1983-88; Norman v. Commissioner,T.C. Memo. 1978-389; and Stroope v. Commissioner,T.C. Memo. 1975-348↩.