RAYMOND McKAY and BARBARA McKAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McKay v. Commissioner
Docket No. 17431-84.
United States Tax Court
T.C. Memo 1986-202; 1986 Tax Ct. Memo LEXIS 404; 51 T.C.M. (CCH) 1030; T.C.M. (RIA) 86202; May 20, 1986. James C. Neil, for the petitioners. Carolyn Bechman and Thomas D. Coker, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies of $5,089 and $7,187 in petitioners' Federal income taxes for 1979 and 1980, respectively. The issues *406 to be determined are (1) whether petitioners were in the lumber business during the years in issue and thus entitled to business deductions and investment tax credit in relation to that activity and (2) whether petitioners are entitled to deductions relating to rental property. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts is incorporated herein by this reference. Petitioners were residents of Placerville, California, at the time they filed their petition herein. In or about February 1976, petitioners purchased for speculation approximately 20 acres of land located in Placerville, California (the Placerville property). The property was covered with large pine trees, ranging in diameter from three to four and one half feet and standing 150 feet tall. In 1978, petitioners paid $6,207.97 for the installation of a well on the Placerville property. In July and September 1979, petitioners made payments of $4,000 and $2,510, respectively, for placing and finishing 864 square feet of concrete on the Placerville property. On or about October 8, 1979, Raymond McKay (petitioner) entered into a contract with Alvin Cheever (Cheever), in which Cheever *407 agreed to clear 16 acres of the Placerville property at $50 per acre, with a provision for a $250 "incentive fee to be paid later providing 90 acre job on adjoining property is not obtained." Petitioners paid $1,700 to Cheever during 1979. During 1979, petitioners paid $37 for electricity used on the Placerville property. On December 20, 1979, petitioners purchased a Caterpillar tractor/bulldozer for $10,545. During 1980, petitioners paid $45.25 for electricity service and $191.87 for telephone service at the Placerville property. In March, April, May, and June 1980, petitioners made four payments totaling $10,195 for a fence around the 20 acres of the Placerville property. In 1981, petitioners moved to Placerville from Van Nuys, California, and constructed a residence on the Placerville property. The only other building on the property is a barn completed in 1984 on the concrete slab placed there in 1979. During 1979 and 1980, petitioners made incidental sales of firewood cut on the Placerville property. They reported income from sales of firewood totaling $1,290 in 1979 and $885 in 1980. Those sales were reported on Schedules C of their tax returns as gross receipts from *408 lumber sales. On the same Schedules C, petitioners deducted $10,000.14 in 1979 and $17,376 in 1980 as expenses relating to lumber sales. They also claimed investment tax credit on "transportation equipment," the tractor, and the fence. In the statutory notice of deficiency, respondent allowed expenses claimed for interest and taxes and disallowed all other expenses claimed on Schedules C and the investment tax credit on the grounds that petitioners did not establish that their lumber sales activity constituted a bona fide business venture entered into for profit or that the claimed expenses were incurred, or if incurred, paid during the years in issue for ordinary and necessary business purposes. Petitioners and their representatives met with an Appeals Officer of respondent in 1985. Petitioners were asked questions concerning the purported lumber sales business, and petitioners' representatives, without objection by petitioners, stated that the business involved cutting down trees and selling them for firewood. In August 1978, petitioners purchased residential property in San Bernardino, California (the San Bernardino property). Petitioners immediately notified the tenant *409 of the property of their intention to raise the rent. In October 1978, the property was declared a public nuisance by the City of San Bernardino.During 1979, petitioners renovated the San Bernardino property in anticipation of renting it to others. The San Bernardino property was not, however, rented during 1979. In September 1979, petitioners paid $65 for insurance on the San Bernardino property. During 1979, petitioners paid $114.67 for utilities on the San Bernardino property. On their tax return for 1979, petitioners claimed rental losses in relation to the San Bernardino property in the amount of $2,819. Of that $639 was shown as "repairs." Ten thousand dollars was listed as "remodeling" and depreciated for the last 6 months of 1979. Respondent allowed amounts representing interest and taxes but disallowed the balance on the ground that it had not been established that the amounts were incurred or, if incurred, were paid for ordinary and necessary business purposes. Other adjustments in the statutory notice of deficiency have now been resolved by stipulation of the parties. ULTIMATE FINDINGS OF FACT Petitioners did not engage in a lumber sales business during 1979 *410 or 1980 on the Placerville property with an actual and honest profit objective. They engaged in incidental sales of firewood during those years and incurred expenses relating to that activity of $250 in 1979 and $175 in 1980. During 1979, petitioners incurred rental expenses in relation to the San Bernardino property and are entitled to a deduction in the amount of $280, not including interest and taxes previously allowed by respondent, in relation to that rental activity. OPINION Petitioners have the burden of proving that respondent's determination is incorrect and that they are entitled to the deductions that they claim. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rockwell v. Commissioner,512 F.2d 882 (9th Cir. 1975); Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioners claim that they are entitled to various deductions (and investment tax credits on equipment) in relation to (1) a purported lumber sales activity conducted on the Placerville property in late 1979 and early 1980 and (2) a rental activity with respect to the San Bernardino property in 1979. Their right to the deductions and credits depends on *411 their showing that their activities either constituted a trade or business or were for the management, conservation, or maintenance of property held for the production of income. Sections 162(a), [1] 167(a), 212(2); see sections 38 and 48(a)(1). To qualify for deductions under these sections, the taxpayer must have engaged in the activity with an actual and honest profit objective. See Dreicer v. Commissioner,78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Jasionowski v. Commissioner,66 T.C. 312, 319-324 (1976). No deduction generally is allowed for personal, living, or family expenses, or for capital expenditures. Sections 262 and 263. Profit objective is a question of fact to be determined from all the facts and circumstances, and greater weight is to be given to the objective facts than to a mere declaration of the taxpayer's intent. Section 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,72 T.C. 659, 666 (1979). Sec. 1.183-2(b), *412 Income Tax Regs., lists some of the factors to be considered in determining whether an activity is engaged in for profit. The factors listed in the regulation are as follows: (1) Manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) expectation that assets used in activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Activity on the Placerville Property
Petitioners claim that their activity on the Placerville property during 1979 and 1980 related to a lumber business conducted with a profit motive. They testified that they did not decide to move their residence to Placerville until December 1980. Respondent contends that the activity coinsisted of land clearing and other conduct preparatory to petitioners' move to Placerville and construction *413 of a residence on the property. Our resolution of this issue depends on the persuasiveness of petitioners' testimony. They did not produce any other witnesses corroborating their statements, and the documentary evidence that they produced was sparse, disorganized, and unhelpful. Because their testimony was vague, inconsistent and improbable, we conclude that it is not adequate to satisfy their burden of proof with respect to the activity conducted on the Placerville property. Both petitioners testified that they originally purchased the Placerville property for speculation. The well built in 1978 and the concrete slab built in 1979 were expected to substantially increase the value of the property. Mr. McKay conceded that clearing the land was also expected to approximately double the value of the land. Mr. McKay also testified that the purpose of putting a fence around the total perimeter of the property in 1980 was to protect the property after an employee attempted to steal the Caterpillar tractor/bulldozer. Petitioner now contends that all of these capital improvements are the subject of depreciation for part of 1979 and all of 1980 on the ground that petitioners were engaged *414 in a lumber sales activity over that period. Mr. McKay's testimony is in essence as follows: He was trained as an engineer and employed by various aerospace companies from 1954 until 1971, when he became a consulting engineer. After 1971, he experienced regular occurrences of unemployment. During a period of unemployment commencing in or about August 1979, he remodeled the San Bernardino property for rental purposes and initiated a lumber business in Placerville. He first became interested in the lumber business when talking to an unidentified individual in Placerville who was in the lumber business. He discussed the lumber business with Forestry Department personnel, log-haulers, and timberworkers. He concluded that the timber market was lucrative and that he could make money from the sale of pine trees from the Placerville property. He commenced business by contracting with Cheever and purchasing a bulldozer to be used by Cheever to knock down trees. After the trees were cut down, he went to sawmills to find out whether they could be sold. At that point in time, February or March 1980, he was told that the trees were diseased and could not be sold. Thereafter he started *415 cutting up oak wood and selling it for firewood. The first inconsistency between Mr. McKay's explanation and other evidence is that the contract with Cheever was for clearing land, not for harvesting timber, and the work was done 2 months prior to the purchase of the bulldozer. Second, he claims that the concrete slab and the well were assets of the lumber business, although they were constructed prior to the alleged commencement of the business and have not been shown to have been used in any manner in the business. Third, the fence around the full 20 acres, which allegedly was purchased to protect the business assets, was acquired after discovery that the trees were diseased and could not be sold. Fourth, checks offered in purported substantiation of the lumber business expenses for labor, gasoline, and other supplies, were either marked "clearing property" or were dated in early 1979 and November and December 1980. Fifth, Mr. McKay's description fo the purported lumber activity is a substantial enhancement on the explanation given to respondent's agent during an appeals conference in 1985 by petitioners' agent in petitioners' presence. All of this evidence reflects adversely *416 on the credibility of Mr. McKay. We do not, therefore, make any findings of fact based on his questionable testimony. Mrs. McKay's testimony was vague and characterized by statements such as "I believe so," "it looks like," "it could be," and "I guess." She contended that all telephone expenses for calls between Placerville and their family residence in Southern California were business expenses. She did not provide any description of specific activities conducted on the Placerville property that could justify the conclusion that a business was conducted there. She merely asserted in general terms that all of the expenses deducted on the tax returns related to "the business." Overall, petitioners' explanation of the purported lumber sales business is improbable. There is no indication of the dollar volume of sales that they supposedly anticipated, and there is certainly no evidence that would justify the expenditure of thousands of dollars for machinery and capital improvements in anticipation of a profit from the lumber business. The receipts and canceled checks offered in substantiation of the expenses are incomplete and do not add up to the amounts claimed on the tax *417 returns, even if we ignore doubts as to the purpose of the payments. No complete books and records were kept, and the activity otherwise was not carried on in a businesslike manner. Notwithstanding his claim that he consulted with various persons involved in the timber business, Mr. McKay demonstrated lack of expertise in failing to make a determination of the feasibility of the sale of timber from his property -- such as a preliminary investigation that would have disclosed whether the trees were diseased. The activity was a part-time effort during periods of unemployment and interrupted by work on other properties. In the context of this case, it is more reasonable to conclude that the capital improvements were intended to prepare the property for other activities, such as the ultimate establishment of petitioners' residence in Placerville. Such expenditures do not establish that the property was held for the production of income in the absence of any evidence that income was anticipated or likely as a result of the activities. Mr. McKay testified that the sale of firewood was merely an incidental activity "that was not my business." Thus be has somewhat undermined an alternative *418 claim that some of the expenses can be deducted against the income from sale of firewood reported on his returns for 1979 and 1980. We have carefully reviewed the canceled checks and receipts submitted by petitioners and their testimony and are unable to identify any expenses that clearly related to the firewood sales other than $11.80 paid in 1980 for advertising. Nonetheless, some expenses were incurred in relation to sales of firewood, such as equipment rental, supplies, and vehicle operating expenses incurred in transporting the firewood. Using our best judgment and bearing heavily against the taxpayers because the inexactitude is of their own making, we conclude that they are entitled to deduct $250 in 1979 and $175 in 1980 as expenses relating to the sale of firewood. See section 183(b); Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). San Bernardino Property
Petitioners testified that during 1979 they were preparing the San Bernardino property for rent and that the availability of the property for rent was made known by "word of mouth." Petitioners had other rental properties during the years in issue, and their testimony as to intent is not contradicted *419 by other evidence. Section 212(2) allows a deduction for ordinary and necessary expenses paid or incurred for the management, conservation, or maintenance of property held for the production of income. The failure to receive income from the property during the year in issue does not preclude deductibility. Section 1.212-1(b), Income Tax Regs., provides that "income" as used in section 212 includes income to be realized in subsequent taxable years. See Hoopengarner v. Commissioner,80 T.C. 538, 541-542 (1983), affd. 745 F.2d 66 (9th Cir. 1984); Johnson v. Commissioner,83 T.C. 103, 119 (1984), on appeal (6th Cir., Apr. 4, 1985, for petitioner, July 8, 1985, for respondent). Capital expenses, however, cannot be deducted currently under section 212. Sections 1.212-1-(n) and 1.263(a)-1, Income Tax Regs. Such capital assets must be depreciated commencing in the year in which they are placed in service, i.e., ready and available for the intended function, [2] and the taxpayers must establish the basis and useful life of the assets in order to be entitled to deductions for depreciation. Section 167(a); section 1.167(a)-1(a), 1(b), 10(b) *420 and 11(e)(1)(i), Income Tax Regs. Petitioners have failed to prove any of these prerequisites to a depreciation allowance. Mrs. McKay testified that the remodeling was "close enough to being done" in June or July 1979. Canceled checks and receipts offered to prove expenses relating to the property include substantial payments for painting, drywall, and construction materials in July and August 1979, and a contract for installation of carpet is dated September 1979. Entries on her calendar in evidence reflect work being done as late as December 21 and December 22, 1979. Consequently, we are unpersuaded by Mrs. McKay's testimony as to when the property was ready and available for rent. *421 Petitioners have substantiated $114.67 for utilities and insurance expense in the amount of $65 incurred in relation to the San Bernardino property in 1979. In support of a "mileage" deduction of $578, they have presented calendars on which mileage for various trips, including trips to San Bernardino, is recorded. It appears, however, that the mileage recorded on the calendars includes travel from their residence to areas other than San Bernardino, such as Victorville. Entries on the calendars include references to a separate property in San Bernardino as to which no evidence was offered, but $1,196 was deducted on their tax return as "mileage" relating to the other property. Otherwise petitioners have presented a disorganized group of canceled checks and receipts, some dated 1978, that, for the most part, could substantiate either capital remodeling expenditures or deductible repairs expenses but are not identifiable as one or the other. For example, checks were written to Horace Train for $300 dated July 6, 1979, labeled "repair"; $854 dated July 25, labeled "siding"; $503.32 dated August 7, labeled "labor"; $250 dated August 19, labeled "work"; and $315 dated December 21, *422 labeled "repairs." Again using our best judgment to approximate the amount of deductible expenses, and bearing heavily against petitioners because of their failure to keep accurate records or to establish amounts falling into dedutible categories and nondeductible capital expenditures, we conclude that petitioners are entitled to deduct $100 for ordinary and necessary expenses in addition to the amounts substantiated for utilities and insurance, excluding the amounts previously allowed by respondent for interest and taxes. We have considered the other arguments of the parties and are not persuaded by them. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. See Clemente, Inc. v. Commissioner,T.C. Memo. 1985-367, with respect to buildings in a dilapidated condition, requiring extensive repairs before they can be rented. Moreover, the taxpayer must capitalize expenditures that would otherwise be currently deductible repairs incurred as part of a plan of renovation or remodeling. See Bloomfield Steamship v. Commissioner,33 T.C. 75, 84 (1959), affd. per curiam 285 F.2d 431 (5thCir. 1961); California Casket Co. v. Commissioner,19 T.C. 32, 38 (1952); Moss v. Commissioner,T.C. Memo. 1986-128↩.